**UTTER–McKINLEY MORTUARIES, a corporation, Petitioner,**
v.
**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 14130.

United States Court of Appeals, Ninth Circuit.

April 4, 1955.

James J. Arditto, Los Angeles, Cal., for appellant.

H. Brian Holland, Asst. Atty. Gen., Joseph T. Goetten, Ellis N. Slack, David O. Walter, Sp. Assts. to Atty. Gen., Daniel A. Taylor, Chief Counsel, Internal Revenue Service, Washington, D. C., for appellee.

Before FEE and CHAMBERS, Circuit Judges, and LING, District Judge.

JAMES ALGER FEE, Circuit Judge.

Utter-McKinley Mortuaries, petitioner, is a corporation which has owned, leased and operated mortuaries from 1929 to date throughout the County of Los Angeles. The question here arises over the disallowance as a deduction of the amount of rent paid by it during the years 1944, 1945 and 1946 to Maytor H. McKinley who was its President and a Director and who owned seventy-five per cent of the stock of petitioner and who held legal title of all the balance of its stock in trust for a former wife. During the years 1943 and 1944, petitioner, desiring to expand into East Los Angeles, ne-

gotiated for the lease of a mortuary owned by Joseph A. Coleman and his wife. The negotiations were conducted through its President and his brother, Clarence H. McKinley, its Director and Vice-President. The Colemans were unwilling to lease to a corporation and insisted that the lease run to Maytor H. McKinley individually. Eventually, they sold to the latter the business, good will and certain personal property, and on February 11, 1944, leased the property to him as an individual for a five year term with three options to renew each for a five year term. The rental was $200.00 a month, plus five per cent of the annual gross receipts in excess of $55,200.00. He also received an option to purchase, which he agreed not to exercise during the life of either of the Colemans. On February 15, 1944, McKinley sold to petitioner the other items for the same price he paid for them, and gave a sublease to the corporation on the same terms except that no option was given to purchase and there was a flat rental of $1,000.00 per month, with no interest in gross receipts. In the years in question, petitioner paid rentals to McKinley and the latter paid rentals to the Colemans as the table below shows:

| Year | Rental paid by Petitioner | Rental paid by McKinley | Difference |
|------|---------------------------|-------------------------|------------|
| 1944 | $10,500.00 | $2,100.00 | $8,400.00 |
| 1945 | 12,000.00 | 2,400.00 | 9,600.00 |
| 1946 | 12,000.00 | 2,907.60 | 9,092.40 |

McKinley had offered to sublease on the same terms as his lease excepting the option to purchase would be excluded, but taxpayer refused.

The control lay in McKinley. But, even if the transaction created an enforceable liability between the parties, the trial court still had the necessity of discovering whether the payments were required. The law is clear enough:

Deductions are allowed for:

"All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, or property to which the taxpayer has not taken or is not taking title or in which he has no equity." Section 23(a) (1) (A), Internal Revenue Code, 26 U.S.C.A. § 23(a) (1) (A).

It was a question of fact as to whether any amount above that paid by McKinley to the Colemans was required to be paid by the petitioner.

The Tax Court say:

"The close relationship between the sublessor and the petitioner and the obvious effect of reducing taxes which grew out of the lease agreement justify our careful scrutiny of the transaction. * * * In the foregoing discussion we have subjected the transaction between Maytor H. McKinley and his wholly-controlled corporation to such a scrutiny. In view thereof we cannot agree that the arrangement between them created a legitimate business expense which was deductible in toto under the statute. No event occurred between the execution of the lease by the Colemans to Maytor and his sublease to petitioner which would enhance the value of the property leased and justify such a rental. It is unnecessary in our view of the matter to determine whether the excess payment over the rent

required was a gift, a distribution of profits, excessive compensation, unreasonable rentals, or otherwise. It is sufficient for present purposes to hold, as we do, that the amounts disallowed by the respondent in the respective taxable years were not required to be made as a condition to the continued use or possession of the Coleman mortuary."

The reasoning of the Tax Court is convincing to us. If we were passing on the facts, we should have arrived at the identical findings. Since it is a fact that taxpayer insisted upon being charged a fixed rental instead of a rental based on gross receipts without a maximum and without an option to purchase, it is not logical to believe that it was required to pay that amount.

If the question were one of the reasonableness of the rental, still we could say that what constitutes reasonableness of a payment is essentially a fact question to be resolved in the light of the special circumstances of each case. In determining that the taxpayer was not compelled to pay the sums which it bound itself at least nominally to pay, the Tax Court necessarily viewed other factors. In Limerick's, Inc., v. Commissioner of Internal Revenue, 5 Cir., 165 F.2d 483, 484, the court said:

"The statute contains no express limitation with respect to the reasonableness of the amounts as a condition to deduction, but rentals or other payments for the use of property which are excessive in amount, taking into consideration all the facts of the particular case, do not constitute ordinary and necessary business expenses, or payments required to be made as a condition to the continued use of the property. The Tax Court * * * was required to make a careful scrutiny to determine how much of the amount, if any, was actually dividends distributed in the guise of rent."

■■ While it is true the Tax Court here refused to find whether the excess payments constituted a gift, dividends or extra compensation, they were under no obligation to do so. There were sufficient facts to show that taxpayer was not compelled to pay anything more than McKinley paid Colemans to obtain the continued use of the property from him. The salient circumstances are set out here. McKinley personally was not primarily in the business of owning or operating mortuaries, which was the exclusive business of taxpayer. The negotiations for the Coleman mortuary were commenced in the interest of the corporation. McKinley carried them forward and ended with an arrangement apparently highly satisfactory to him personally. McKinley as to the corporation was a fiduciary, bound to act with the utmost good faith. He could not obtain a personal advantage in a transaction which was initiated for the benefit of the entity for which he was acting. Therefore, when he obtained an option upon the Coleman mortuary, he obtained it for the corporation. Undoubtedly, the Colemans would not give the option direct to the corporation, and they relied upon the personal promise of McKinley that he would not exercise the option as long as either of them survived. But whatever the bargain was between the Colemans and McKinley, he was bound to give any advantage there was contained therein to the corporation for which he was a trustee. Therefore, it was arguable that the corporation had an equity in the property. This circumstance alone may have placed it outside the pale of the statute.

The thesis developed above would be applicable if the corporation were so constituted that the control thereof lay in other hands than those of McKinley. As the agent of a separate entity capable of dealing independently, he would have been bound to give to it all the perquisites and advantages which he obtained.

■■ Here where he had absolute control of the corporation, the fact that it rejected an option on the property and refused to pay the rental which Mc-

Kinley had personally agreed to pay to the Colemans cannot be used to abolish his obligation as a fiduciary. The fixed rental which it agreed to pay to McKinley was unreasonable under all the circumstances. The burden imposed by the statute to permit deductions for rentals is onerous. Taxpayer must have proved to the trial court that the payments were wrung from it by compulsion of circumstances delineated by law. The question whether surrounding conditions drove taxpayer through this narrow gate was surely one of fact. Since McKinley was bound to give to this closely held corporation all the advantages which he obtained by his dealing in its behalf, any sums paid to him by the corporation above those paid by him to the Colemans were not a proper deduction. The Tax Court found the facts and the determination was not clearly erroneous. This Court affirms the findings as the rule and custom require.

Affirmed.