HERBERT DAVIS AND GEORGIA DAVIS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51509.[1]   Filed April 10, 1956.

[1] The first issue presented in this proceeding is quite similar to the issue involved in the case of *Abe B. Wender* v. *Commissioner*, Docket No. 51519, in which case Findings of Fact and Opinion have also been filed this day. The proceedings in the two cases have not been consolidated. It has been stipulated, however, that there shall be incorporated as evidence into the record in each case, so far as relevant thereto, all of the evidence introduced in the other proceeding.

Clyde W. Key, Esq., for the petitioners.
Herman Wolff, Jr., Esq., for the respondent.

OPINION.

Fisher, *Judge:*  Respondent has disallowed rental payments made by petitioner in 1948, 1949, and 1950, in excess of $3,600 per year on the ground that such amounts were excessive and were not required

to be made as a condition to the continued use or possession of the property under section 23 (a) (1) (A).

Section 23 (a) (1) (A) provides for the deduction of all ordinary and necessary business expenses, including "rentals or other payments required to be made as a condition to the continued use or possession * * * of property to which the taxpayer has not taken or is not taking title or in which he has no equity." The statute does not specifically limit deductibility to a "reasonable" amount as in the case of the allowance for salary or compensation.

A taxpayer may freely rent business property on such terms as he thinks appropriate or otherwise necessary for the conduct of his business and such terms will generally be respected for tax purposes. However, the rental arrangement must, in fact, be what it purports to be if a deduction for rental payments is to be allowed. In circumstances where the lessor and the lessee are closely related and their dealings have not been at arm's length, the transaction offers a ready means for channeling earnings from one member of a family to another, and invites careful scrutiny to determine whether the amounts paid as rent were required to be so paid within the meaning of the statute. *Roland P. Place*, 17 T. C. 199 (1951), affirmed per curiam (C. A. 6, 1952) 199 F. 2d 373; *Stanwick's, Inc.*, 15 T. C. 556 (1950), affirmed per curiam (C. A. 4, 1951) 190 F. 2d 84.

It is not necessary for us to determine whether such payments as may be in excess of those required, within the meaning of the statute, were in reality a gift, or a diversion of income, or whether the transaction was a sham. See *Utter-McKinley Mortuaries* v. *Commissioner*, (C. A. 9, 1955) 225 F. 2d 870, affirming a Memorandum Opinion of this Court. We need only inquire into the extent, if any, to which such payments were in fact in excess of what was required to be made as a condition to the continued use and the occupancy of the property. To the extent of any such excess, the payments are not deductible. In *Roland P. Place, supra*, we said (p. 203):

The basic question is not whether these sums claimed as a rental deduction * * * were in fact rent instead of something else paid under the guise of rent. The inquiry is whether the petitioner was in fact and at law "required" to pay these sums as rent. * * *

Such an inquiry in a situation involving a family transaction requires a careful examination of the circumstances surrounding the rental of the property to determine the intentions of the parties in agreeing upon a lease and in fixing the terms thereof. In this connection, consideration must be given to the reasonable rental value of the property had the lease been entered into in an arm's-length transaction. As we said in *Jos. N. Neel Co.*, 22 T. C. 1083 (1954), "a critical examination of all the evidence bearing upon the transaction involved, * * * is required to determine the true character of the item * * *."

Respondent, in his statutory notice, allowed a rental deduction of $3,600 a year. His determination is presumed to be correct and the burden is on petitioner to establish error. We think, upon the basis of the following analysis, that petitioner has failed to do so.

Petitioner and two others knew that they were to be the sole licensees for the sale of liquor in Clinton. We think it was quite apparent to them that their monopoly under local option would produce gross sales to each which would be quite substantial. It must have been equally obvious to petitioner (and Wender, who made an identical arrangement with his mother) that a percentage lease providing for the payment of 5 per cent of gross sales would yield far more to his parents than a fair rental for the use of the property.

The property used by petitioner was purchased by arrangement with his father at the inception of the period of operation under local option, and for the sole purpose of taking advantage of the opportunity afforded by the "wet" victory. Prior to petitioner's occupancy, the property rented for only $140 a month. The whole property was purchased for only $9,800. Under the percentage lease, the rents on the basis of 5 per cent of gross sales were $22,073.95 for 1948, $23,504.02 for 1949, and $20,308.85 for 1950.

Much the same picture is found in the case of Wender who leased from his mother. Prior to such lease, the property rented for $125 a month. Under a percentage lease arrangement substantially identical with that of petitioner, he paid his mother $17,933.41 for the year 1949.

The startling contrast of the rentals paid by petitioner and Wender to parents with the rentals for the same properties immediately prior thereto is, if anything, accentuated by the experience of Sample, the third licensee, who leased his place in an arm's-length transaction. For operating a comparable liquor store in the same community, with the same special privileges, he leased the premises known as the Fred Lyons Building for $125 per month in 1948 and 1949. Later, he arranged with another property owner to have a new building erected. He financed it by advancing $10,000 for which he received credit for 26 months' rent, or an average monthly rental of $385.

We think the facts relating to the three licensees present the key to the solution of the problem before us. We do not think that petitioner or Wender would have entered into any such arrangement with anyone other than members of the family. It is apparent, as already indicated, that they must have known that the percentage leases would produce sums greatly in excess of fair rentals. Moreover, it is clear that they have failed to establish that the allowance of $3,600 a year determined by respondent (which was in excess of the minimum rental of $200 per month provided for in both petitioner's

and Wender's lease) was less than a fair amount required to be paid for the continued use of the property.

We have, of course, considered the testimony in the record concerning percentage leases. We fully realize that such arrangements were in common and general use during the years in question. The issue before us, however, is not that of the propriety of percentage leases. Our problem relates to a specific percentage lease executed under the special circumstances we have already outlined.

We note that inquiries were made in Tennessee and Florida concerning percentage leases in the retail liquor trade. The sources of the information, however, were not before the Court, and there is nothing to indicate that the circumstances paralleled those in the instant case. We are told nothing of the cost, value, or rental value of the properties leased, the relation of the percentage to rental value, or whether the lessees were operating under normal competitive conditions. The same comment may be made with respect to the testimony of Brownlow, who obviously had no knowledge of the background circumstances on which were based the percentage arrangements to which he referred. We note, also, that although Brownlow testified as an expert, he was not asked to express an opinion as to the fair rental value of petitioner's store either on a fixed rental or percentage lease basis.

With respect to the negotiations with Parker, we need only mention that they never came to fruition.

The circumstances of the Troy Dykes' lease of property in Norris, Tennessee, cannot be taken to lead to a different conclusion. It is true he was a retail liquor dealer, and that he had a comparable monopoly in his town (only two liquor stores were permitted) and that he entered into a lease (with lessors to whom he was not related) which called for a percentage of 9 per cent of gross income. It is obvious that gross income would be much less than gross receipts in an enterprise of this type, but there is nothing in the record from which we can correlate or compare on a percentage basis, or otherwise, the ultimate rent paid by Dykes to that paid by petitioner. Another significant factor is that here the monopolist licensee of the liquor store met face to face with his counterpart—the owner of all of the property in Norris available for the operation of such a store. Thus, even if we were in a position to compare Dykes' ultimate rent with that of petitioner, the result could hardly be determinative. We add that there is no evidence of the fair rental value of Dykes' store on either a straight rental or percentage lease basis.

As indicated above, therefore, we must sustain respondent on this issue.

■ Respondent has disallowed as a deduction an amount of $3,252.45 paid by petitioner in 1950 for dues to ACLDA. There is no dispute

as to the amount so paid. Respondent determined that such sum constituted a nondeductible expenditure under either section 23 (a) (1) or 23 (o) as one made for "lobbying purposes, the promotion or defeat of legislation, the exploitation of propaganda, including advertising other than trade advertising, and contributions for campaign expenses." Regs. 111, secs. 29.23 (o)–1 and 29.23 (q)–1. The burden of proving otherwise is upon the petitioner.

The law is well settled. In *Textile Mills Corp.* v. *Commissioner*, 314 U. S. 326 (1941), the Supreme Court, in a case involving donations made by a corporation, gave its approval to the substance of the regulations here involved when it sanctioned the then applicable provision of Regulations 74 containing precisely the same language presently included in Regulations 111, sections 29.23 (o)–1 and 29.23 (q)–1. The application of such principles to limit the deductibility of donations of individuals under section 23 (o) by Regulations 111, section 29.23 (o)–1, is equally valid. *Textile Mills Corp., supra; Mary E. Bellingrath*, 46 B. T. A. 89 (1942) ; [2] *Mrs. William P. Kyne*, 35 B. T. A. 202 (1936). We have also held that the principles embodied in such regulations were applicable as well under section 23 (a). *McClintock-Trunkey Co.*, 19 T. C. 297, 304 (Issue 2), reversed on another issue (C. A. 9, 1954) 217 F. 2d 329. See also *American Hardware & Eq. Co.* v. *Commissioner*, (C. A. 4, 1953) 202 F. 2d 126, affirming a Memorandum Opinion of this Court.

We think petitioner has not met his burden of proving that no substantial part of the funds of ACLDA were used for the purpose of carrying on propaganda or otherwise attempting to influence legislation within the meaning of those terms under section 23 (o) of the Internal Revenue Code. On the contrary, all of the evidence before us establishes quite clearly that ACLDA funds were used mainly to defray the expenses of a campaign designed to persuade the voters of Anderson County to vote wet in the liquor referendum of 1950, and also to finance the cost of ensuing litigation. The ACLDA appears to have been active and held meetings only around election time. At such time it spent its funds on registration fees for voters, automobile transportation for voters, presumably to the polls, liquor which was distributed to undisclosed persons, and to pay for election officers. Numerous other expenditures are listed in the ACLDA records along with rather cryptic notations which appear to be in much the same vein as the aforementioned expenditures. They have not been identified specifically by petitioner or his witnesses. Since the burden of proof is upon petitioner to overcome the respondent's determination,

[2] The provisions of Regulations 94 there involved are identical with those presently before us.

we think he must show the nature of such expenditures to be otherwise. He has not done so, and thus has failed in his burden of proof.

*Mary E. Bellingrath, supra,* is here decisive. In that case, the taxpayer was a member of several partnerships which were engaged in the business of bottling and distributing soft drinks. Such partnerships were members of the Alabama Bottlers' Association, a nonprofit organization, formed to promote the interests of those engaged in the bottling and distribution of soft drinks in Alabama. The partnerships contributed funds to such association in the year 1936. At that time legislation proposing to establish a 20 per cent tax on the sale of soft drinks was pending before the Alabama Legislature. Members of the association were opposed to the passage of such legislation. Data, information, and other material were gathered by the organization and paid for out of the funds contributed to the association. Such data and information were being gathered for the use of the members of the association as a basis for their testimony at legislative committee hearings. We held that the funds of the association were expended in the main for the defeat of proposed legislation and thus fell within the precise language of the then applicable regulations, and that the petitioner's contribution to such association was not deductible. See also *H. R. Cullen,* 41 B. T. A. 1054 (1940).

Petitioner cites *Independent Brewing Co. of Pittsburgh,* 4 B. T. A. 870 (1926) (funds used for attorneys' fees incurred in testing the constitutionality of the Prohibition Act), *George Ringler & Co.,* 10 B. T. A. 1134 (1928) (expenditures made for counsel fees incurred to test constitutionality of wartime prohibition legislation, to conduct an investigation into whether the alcoholic content of certain beer was intoxicating, and to carry on a campaign against certain assertions made by the Anti-Saloon League), *Best Brewing Co.,* 16 B. T. A. 1354 (1929) (contributions to a trade organization engaged in performing certain regulatory services for and furnishing information to its members), and several Memorandum Opinions of this Court. All, however, are clearly distinguishable from the instant case, since none involved the expending of any moneys for defeating or promoting legislation, campaign expenses, or otherwise conducting propaganda related to such purposes.

■ In 1949, petitioner paid $60 to the Oak Ridge Golf and Country Club and claimed such amount as a deduction on his income tax return for 1949. In 1950, he paid $33 to the Oak Ridge Golf and Country Club, $60 to the Deane Hill Country Club, $20 to the Exchange Club, and $12 to the Medical Wives Auxiliary, a total of $125, which amount he also claimed as a deduction on his income tax return for 1950. Respondent has disallowed such deductions for both of the years on the ground that they did not constitute ordinary and necessary business

expenses but were personal expenditures within the meaning of section 24 (a) (1). The burden of proof is upon petitioner and he must show that these expenditures so paid to the several organizations were related to the conduct of his liquor business in Clinton and were ordinary and necessary to the operation thereof.

The evidence in the record is meager. It leaves no doubt in our mind that the reason petitioner joined the three clubs was to make contacts in an effort to promote sales for his retail liquor store. The record fails to show, however, the specific purpose of each of the expenditures made, and it does not negative the possibility that some part thereof was spent for such purposes as meals for himself and members of his family. On the other hand, the evidence establishes that neither petitioner nor any member of his family used either the golf course or the swimming pool of either of the country clubs. Considering the testimony as a whole relating to this issue, we think we may reasonably infer that at least half of the expenditures were for business purposes, and constituted ordinary and necessary expenses. Under the principles of *Cohan* v. *Commissioner*, (C. A. 2, 1930) 39 F. 2d 540, we allow petitioner the deduction of one-half of the amount paid to Oak Ridge Golf and Country Club in 1949, and one-half of the amounts paid, respectively, to said club, to the Exchange Club, and to the Deane Hill Country Club in 1950.

The petitioner has not offered any evidence in regard to the payment of money to, or his or his wife's association with, the Medical Wives Auxiliary. There is nothing in the record to indicate the nature of such organization or the benefit that might be derived by him through association with it. We hold, therefore, that petitioner has failed to show that such expenditure was in any way related to the conduct of his trade or business or was otherwise deductible under section 23 (a) (1).

*Decision will be entered under Rule 50.*