WADE MOTOR COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 48195, 55687.    Filed May 9, 1956.

*William Waller, Esq.,* and *Lawrence Dortch, Esq.,* for the petitioner.

*W. Preston White, Jr., Esq.,* for the respondent.

238

OPINION.

FISHER, *Judge:* During the taxable years here in question (fiscal years from September 30, 1948, to September 30, 1952, inclusive), peti-

tioner was a corporation (hereinafter sometimes referred to as the Corporation) organized originally on September 13, 1946. Its' outstanding stock was wholly owned by W. P. Wade. Petitioner's predecessor was a sole proprietorship owned by Wade and conducted as such until incorporation in 1946. During the periods of both sole proprietorship and corporate operation, the business conducted was that of a Ford agency in Gallatin, Tennessee.

The Corporation, without formal assignment, succeeded to, and carried out the provisions of a contract between Wade (then sole proprietor of the Ford agency) and the Realty Company dated December 12, 1944. Under the terms of the agreement, the Realty Company agreed to furnish the necessary funds to finance the operations of the agency, including the construction of a building to be operated by the latter, and the Realty Company was to receive as rental therefor one-half of the profits of the agency. The contract further provided, however, that Wade was to receive from the Realty Company out of its one-half share of the profits interest at the rate of 6 per cent per annum on any money loaned by Wade to the Ford agency.

For all practical purposes, the arrangement with the Realty Company operated in such a way that the Realty Company furnished only such financing as was not furnished by Wade himself. Wade invested substantial amounts in the Corporation, and actually financed the construction of the building in which the agency was operated. The building was constructed in 1946 during the period of the sole proprietorship, but was bought later in 1946 from Wade by the Realty Company for $76,000. Subsequently, the Realty Company made improvements at a cost of $7,500 or $8,000.

During each of the taxable years in question, the Corporation paid one-half of its profits to the Realty Company, the payments being designated as rent, but the Realty Company, in turn, paid to Wade individually an annual amount based upon 6 per cent of his stockholdings in the Corporation.

Respondent determined that, to the extent of the amounts so paid to Wade, the payments to the Realty Company were not rent, but amounted to a distribution to Wade of profits of the Corporation, and that such amounts were not deductible by the Corporation as rent. Petitioner asserts that the full amount paid to the Realty Company was rent, and that the amounts paid by Realty Company to Wade were interest paid by it, with which petitioner was in no way concerned.

We think it obvious that the payments to Wade were not interest. Wade loaned nothing to the Realty Company. What he actually did was invest money in the Corporation wholly owned by him. While his investment in the Corporation relieved the Realty Company, *pro*

*tanto*, from its obligation to furnish the finances, it did not constitute a loan either to the Realty Company or to the Corporation.

We also think it clear that the rent paid to the Realty Company, to the extent of the 6 per cent per annum payments from the Realty Company to Wade (subject to the adjustment hereinafter set forth), did not constitute "rentals or other payments required to be made as a condition to the continued use or possession, for purposes of trade or business, of property * * *" within the meaning of section 23 (a) (1) (A) of the Internal Revenue Code of 1939. Under the terms of the original agreement of December 12, 1944, between Wade and the Realty Company (adopted by the Corporation when it took over Wade's business), the Realty Company was entitled to a full one-half of the profits as rent only if it furnished the necessary money to finance the agency (later the Corporation). This it did not do, and it is clear that the parties contemplated the likelihood that it would not do so, because the same contract provided that Wade himself would receive from the Realty Company 6 per cent per annum for any money loaned to the agency. The interested parties, including, later, the Corporation, made it clear by their conduct that the words "money loaned" were construed by them to mean or include any investment in or financing of the agency, and later the Corporation, by Wade. All that the agreement did, for practical purposes, was to measure the extent to which the Realty Company's right to receive one-half of the profits of the Corporation as rent would be reduced as a result of Wade's personal investment or financing. Whether the full one-half of the profits was first paid to the Realty Company under the guise of rent followed by repayment of so-called interest by the Realty Company to Wade, or whether the rent to the Realty Company had been determined on a net figure based on the same calculations is immaterial. In either event, the actual rent to the Realty Company was one-half of the profits of the agency (and later of the Corporation) less the amount payable to Wade. Under the method actually used, the Realty Company was a mere conduit insofar as the payments to Wade were concerned.

It is clear that during the period of the existence of the Corporation (and the years before us are all during that period) the payments to Wade were keyed to his stockholdings, and not to any loan. He merely received, through the medium of the Realty Company, that part of the rent to which the Realty Company was not entitled under the agreement of the interested parties as extended and adopted by them upon the advent of the Corporation. To the extent of such repayments to him, the payments to the Realty Company were not rentals or other payments required to be made as a condition to the

continued use or possession of property. When received by Wade through the medium of the Realty Company, the payments were clearly indirect distributions to him by the Corporation. We think the record clearly supports this view, and negatives any conclusion to the contrary. Certainly petitioner, which has the burden of proof, has failed to show error in respondent's determination to that effect.

Petitioner argues, however, that if we conclude (as we have done) that the payments to Wade were distributions to him by the Corporation and, as such, not deductible, the result is that the net income of the Corporation was thereby increased in the same amount; that one-half of such amount is payable to the Realty Company as rent; and that a deduction to the extent of such one-half of said paid payments must in turn be allowed.

We have carefully considered all of the circumstances in the setting of the close practical relationships of the parties in interest as detailed in our Findings of Fact, and have concluded that, irrespective of any contractual obligation to the Realty Company, petitioner (which has the burden of proof) has failed to establish that any derivative increase in income from a tax standpoint arising out of the disallowance of the deduction in question is a basis for holding that a resulting obligation to pay one-half thereof to the Realty Company justifies a determination that such payment was required for the use or occupancy of property within the meaning of section 23 (a) (1) (A).

Although arising under factual circumstances differing from those presented in the instant case, our opinions in *Roland P. Place*, 17 T. C. 199 (1951), affirmed per curiam (C. A. 6, 1952) 199 F. 2d 373; *Jos. N. Neel Co.*, 22 T. C. 1083 (1954) ; and *Herbert Davis*, 26 T. C. 49 (1956) reflect our approach to the construction of the relevant provisions of section 23 (a) (1) (A), *supra*, in a background where the close relationship of the parties and the nature of the transaction invite careful scrutiny.

Respondent has allowed the full rental claimed on petitioner's returns, less the amounts paid to Wade by the Realty Company discussed above. In the light of our discussion, *supra*, we sustain respondent in disallowing deductions for rent to the extent of such payments to Wade.

In his statutory notices of deficiencies herein, the respondent increased petitioner's income in the amounts of $1,256.24, $2,462.09, $5,084.64, and $4,470.72 for the taxable years ended September 30, 1948, 1949, 1950, and 1951, respectively, for finance reserves accrued by various finance companies during these years. The respondent further disallowed a salary deduction in each of the taxable years

ended September 30, 1951, and September 30, 1952. The petitioner now concedes that these adjustments made by the respondent were correct but asserts that since these amounts increased the income of petitioner, it is obligated to pay one-half of such amounts to the Realty Company as rental. Based on this premise, petitioner then contends that it is entitled to a deduction for the amounts it is obligated to pay the Realty Company.

The petitioner maintains its books on the accrual basis of accounting. Petitioner concedes that it has neither accrued the additional income on its books nor accrued the additional expense of one-half thereof which it now claims is payable to the Realty Company as rent. The record does not indicate when the petitioner ceased to contest the respondent's adjustments or first admitted or recognized an additional obligation to the Realty Company. It does indicate however, that it was some time subsequent to the taxable years here involved. Petitioner makes the following statement on brief in this connection: "Half of the finance reserves and excessive salary were not accrued as deductions because at first such items were not considered income."

We find the state of the record to be not only that petitioner did not accrue on its books as rent in or for any of the years in issue the portion of the items in question which it now claims to be due to the Realty Company as rent, but also has failed to offer any evidence that in any of such years it recognized that such amounts were due the Realty Company, or that claim therefor was asserted by the Realty Company in any of such years. The earliest indication in the record that the issue relating to finance reserves was not in dispute and that a corresponding obligation of one-half thereof to the Realty Company was recognized is to be found in the petition in Docket No. 48195, which was not filed until May 4, 1953. Likewise, the earliest similar indication with respect to the items of salary disallowance and related obligation to the Realty Corporation is to be found in the petition in Docket No. 55687, which was filed on December 23, 1954. Under the circumstances, it is clear that petitioner has failed to meet the burden of proving that any of the items in question are to be accrued in any of the years before us. See *Lucas* v. *American Code Co.*, 280 U. S. 445 (1930); *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516 (1944); *Great Island Holding Corporation*, 5 T. C. 150 (1945); *Arabol Manufacturing Co.*, 26 B. T. A. 1068 (1932).

We, therefore, approve respondent's disallowance for the years in question of accrual of rental deductions attributed by petitioner to one-half of the finance reserves and one-half of disallowance of salary.

*Decision will be entered for the respondent.*