James Phelan & Company, Inc. v. Commissioner.
James Phelan & Co. v. Commissioner
Docket No. 78911.
United States Tax Court
T.C. Memo 1960-286; 1960 Tax Ct. Memo LEXIS 9; 19 T.C.M. (CCH) 1566; T.C.M. (RIA) 60286; December 30, 1960
*9 James F. Mazyck, Esq., 80 Federal St., Boston, Mass., for the petitioner. Charles T. Shea, Esq., and Lawrence A. Wright, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in income tax of the petitioner as follows: Fiscal Year Ended
June 30,
Deficiency
1953
$ 634.53
1955
2,077.47
1956
1,633.62
For the fiscal years ended June 30, 1955 and June 30, 1956 petitioner claimed deductions as rent in the amounts of $35,000 and $32,500. respectively. The Commissioner disallowed the deductions to the extent of the excess over $25,960 for 1955 and over $26,850 for 1956. The propriety of the disallowances is the only issue for decision. Findings of Fact Petitioner, a Massachusetts corporation, with a principal place of business at 162 Tremont Street, Boston, Massachusetts, during the years involved was engaged in the restaurant business. At all times material, petitioner kept its books of account and filed its income tax returns, on an accrual basis for fiscal years ended June 30, 1953, 1955, and 1956, with the district director of internal revenue at Boston, Massachusetts. *10 James Phelan was the president and sole stockholder of the petitioner for the years under review. James Phelan is the owner of land and a building located at 162 Tremont Street, Boston, which property he leases to petitioner under a lease dated March 13, 1950. The lease was recorded with the Registry of Deeds, Suffolk County, Massachusetts on March 21, 1950. The lease was for a term of 15 years with an annual rent of $12,000 net yearly payable in equal monthly payments of $1,000 on the first day of each month, beginning April 1, 1950. The petitioner-lessor also agreed to pay all taxes, heat and operating expenses and assessments and water charges. The taxes on the leased property apportioned to fiscal years ended June 30 were as follows: Year Ended
June 30,
Amount
1955
$13,960
1956
14,850
The rentals accrued to James Phelan on petitioner's books for the fiscal years ending June 30, 1955 and 1956 were $35,000 and $32,500, respectively, and petitioner claimed these amounts as deductions for rent accrued on its returns for those years. James Phelan reported as rental income on his income tax returns for the taxable years 1954, 1955, and 1956 the $35,000 *11 and $32,500. The amounts were reported over a three-year period because James Phelan's taxable year was the calendar year. The Commissioner disallowed the deduction claimed for each year to the extent that it exceeded $25,960 for the year ended June 30, 1955 and $26,850 for the year ended June 30, 1956. In the audit report accompanying the deficiency notice this disallowance was explained as follows: The taxpayer leases a building from James Phelan a majority stockholder. The lease calls for rental payments of $12,000.00 per year plus the amount of real estate taxes per year. The excess of the amount paid per the return over the amount per the lease has been disallowed as follows: [For 1955]
Rent per the return
$35,000.00
Rent per the lease
25,960.00
Adjustment
$ 9,040.00
[For 1956]
Rent per the return
$32,500.00
Rent per the lease
26,850.00
Adjustment
$ 5,650.00
Opinion In the petition it is alleged that "the ruling of the Commissioner that petitioner erred in paying rent in excess of an alleged agreement with its majority stockholder is erroneous because it was the intent of the parties to the agreement that the majority stockholder *12 be paid rent for the use of the building which petitioner used in terms of the dollar value for the year in which the agreement was executed." The petition continued, The facts upon which the petitioner relies as a basis for this proceeding are: * * * the petitioner through its President had reached and accepted an agreement with its majority stockholder, who for all practical purposes was the only stockholder, whereby the majority stockholder was to receive a certain rental per year plus an amount equal to real property taxes assessed upon the property, it being understood that the majority stockholder was entitled to receive the stipulated sum in terms of dollar value for the year in which the agreement was executed. Though somewhat obscurely phrased, we take it that the issue presented by the pleadings was whether the amounts claimed as deductions for rent "were in fact in excess of what was required to be made as a condition to the continued use and the occupancy of the property. To the extent of any such excess, the payments are not deductible." Herbert Davis, 26 T.C. 49, 56. Further light is thrown on the issue before us by the following colloquy which took *13 place at the trial: Mr. Shea [Counsel for Commissioner]: This line of testimony [in regard to Phelan's compensation] is not relevant to the issue before the Court, the issue before the Court is excessive rent. The Court: Well, it is really whether it is excessive rent, or whether it is rent at all? There is nothing in the income statute about reasonableness of rent. Mr. Shea: That's correct, it is a question of whether it was necessary in order to have the continued use and possession of this building. The Court: That's the issue as I understand it. Mr. Mazyck [Counsel for petitioner]: That's correct, your Honor, but we are leading up to a situation wherein this will become material. The burden of proving error in the Commissioner's determination is on petitioner. We find no evidence in the record before us which would show that the Commissioner erred. The only witness was James Phelan. He testified that there was no lease between petitioner and himself for the building prior to a mortgage being placed thereon with the Metropolitan Life Insurance Company and that, as part of the refinancing, the Company insisted on a lease to protect "them in their payments on the *14 mortgage and interest". He further testified, "therefore it was Metropolitan's lease, not ours, otherwise I would be leasing from myself to myself". Then, his testimony goes, the lease was not supposed to provide "a maximum amount that could be drawn under the lease" and petitioner's counsel stated that they were "seeking to establish" that the lease "has been substantial only with regard to a third party, Metropolitan, and not with regard to Phelan as an individual owner of property, and Phelan Company of which he was the sole stockholder". We do not think petitioner can thus escape the plain terms of the lease. It called for rental of $12,000 per year plus taxes. The amounts of the taxes apportionable to petitioner's fiscal years are stipulated. Petitioner was not bound to pay any more than the amount legally required to be paid by the lease "as a condition to the continued use and occupation of the property," and can deduct no more. Herbert Davis, supra. What might have been in Phelan's mind as to what the lease did or did not require between his corporation and himself has little weight. Legally, he could not charge the corporation more as rent than the lease provided *15 and the lease, as we interpret it, did not require petitioner to pay more as rent than the $12,000 plus the apportioned taxes. This is what the Commissioner allowed. Petitioner argues further that if the amounts which it deducted as rent are not so deductible, then the excess which the Commissioner has disallowed, should be deductible as compensation paid to Phelan. This issue was not raised in the pleadings and it is not necessary for us to decide it. Herbert Davis, supra. However, we will consider petitioner's argument on its merits so that if an appeal is taken, the appellate court will know our views. Petitioner's books did not treat the disallowed amounts as compensation to Phelan and petitioner did not claim them as deductions for compensation on its income tax returns. The evidence before us shows that the compensation received by Phelan from petitioner was $13,000 in fiscal 1955 and $11,500 in fiscal 1956. These were the amounts deducted by petitioner as compensation paid Phelan and were so reported by him on his own returns. There is nothing in the record to show that Phelan was entitled to any more compensation in the years in question than he was paid according *16 to the books in those years. It is argued, however, that the petitioner's bookkeeper mistakenly charged the rental account with amounts that really were compensation. But the bookkeeper was not called to testify, and Phelan, who did testify, only said, Q. Mr. Phelan, once again, did you consider that for the years in question, 1955, in which you drew $13,000 from James Phelan & Company, plus whatever excess rents were paid you, constituted more than fair compensation for the year? A. I say again that I only drew what was necessary, that's all I can say. I never wanted to burden the Company, when the Company needed it I loaned them many tens of thousands of dollars, but in return for it I expected the Company would yield to my needs when I needed it. Q. Would you tell the Court in your own words the procedure under which you drew sums of money from the Company, whether as rent or as salary? A. Yes, sir, I would call the bookkeepers and ask them if they would bring me down a certain amount of money - Q. Speak a little louder, please. A. I would call the bookkeeper and ask if she would bring me down a certain amount of money, which was my current need, she would bring it down, *17 and I never asked to what she was charging it. I didn't know that a technicality would arise up such as this owning all the stock as I did, and being a lease between me and myself. I never thought for a minute that an advantage would be sought, otherwise I would have - well, I'm not a bookkeeper, I'm an ignorant man. Q. Mr. Phelan, who determined the charging to the respective accounts, rent and salary, of the amounts you drew? A. Sir? Q. Who determined the charging to the respective accounts of rent and salary of the amounts that you drew? A. Well, the bookkeepers and the accountant I hired at that time, they kept all those matters, I knew nothing about such things. Q. Did you ever give any specific directions as to which accounts should be charged when you drew sums of money? A. Never. At the end of the year certain things were charged to salary, certain things charged to rent, and I assumed they charged it properly, I became a victim, I suppose, of a technicality in bookkeeping rather than a matter of taxes. As we view it, this testimony is a long way from establishing that the disallowed amounts really represented compensation to Phelan. Furthermore, there is nothing *18 in the record to show that the amounts deducted by petitioner as compensation paid Phelan were unreasonably low or that additional payments would have been reasonable compensation. To the contrary, there is evidence to show that another corporation wholly owned by Phelan which was also engaged in the restaurant business and for which he performed services similar to those he performed for petitioner, paid him but $3,900 per year in 1955 and 1956. This certainly shows that the amounts paid by petitioner to Phelan as compensation and so reported were, if anything, more than reasonable and we hold that petitioner is not entitled to any additional deductions for compensation. We find no error in the Commissioner's determination. Decision will be entered for the respondent.