Racquet Garage Corporation v. Commissioner.
Racquet Garage Corp. v. Commissioner
Docket No. 2321-62.
United States Tax Court
T.C. Memo 1964-9; 1964 Tax Ct. Memo LEXIS 326; 23 T.C.M. (CCH) 37; T.C.M. (RIA) 64009; January 21, 1964
Colman B. Stein, for the petitioner. Dennis C. DeBerry, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies in the petitioner's income tax for 1958 and 1959 in the respective amounts of $7,935.25 and $12,378.88. The sole issue is whether a certain portion of rental payments made by petitioner in each of the years 1958 and 1959 is deductible as an ordinary and necessary business expense. Findings of Fact Some of the facts were stipulated and they are so found. Racquet Garage Corporation, hereinafter called petitioner, is a corporation organized under the laws of Pennsylvania, with principal *327 offices at Philadelphia, Pennsylvania. Petitioner's corporation income tax returns for 1958 and 1959 were filed with the district director of internal revenue at Philadelphia, Pennsylvania. During the years involved the petitioner was engaged in the operation of parking lots and garages in Philadelphia, Pennsylvania. On May 1, 1944 petitioner executed a "Lease Agreement" with Brine Corporation, a Pennsylvania corporation, for a public garage located in Philadelphia. Either party to the "Lease Agreement" could terminate it with a written notice of 30 days; otherwise the agreement would condays; otherwise the agreement would continue on a month-to-month basis. The agreement provided, in part, as follows: The rental hereunder shall be the net amount remaining from all the gross receipts of whatever kind and nature after deducting therefrom (a) the total costs and expenses of operation and maintenance; (b) the costs of all materials and products sold; and (c) the sum of Fifty Dollars ( $50.) per week. The rental on this basis shall be settled and paid by the lessee the 15th day of each month for the prior month's operation. Subsequently, Brine Corporation and petitioner executed *328 an amendment to the "Lease Agreement" which provided that "[as] of November 1, 1953, the management fee provided in (c) herein is increased from $50.00 per week to $500. per month." On October 30, 1953 the petitioner executed a "Lease Agreement" with Markette Corporation, a Pennsylvania corporation, for an open air parking lot located in Philadelphia. The term of the agreement was one year, and the annual rental was $25,500. It was mutually agreed that the "Lease Agreement" would be terminated at the end of the term upon 30 days written notice; otherwise the agreement would continue on a month-to-month basis. The "Lease Agreement" stated, in part, that "[this] lease cancels and supersedes lease dated August 3rd, 1945 between Richard J. Seltzer, Agent and the Racquet Garage Corporation covering part of the premises herein demised." Isador Sley is president and sole stockholder of the petitioner corporation. Harry Sley, Isador's brother, was president of both the Brine Corporation and the Markette Corporation, and he owned 52 percent of the stock in each corporation. The balance of the stock in both the Brine Corporation and the Markette Corporation was held by Harry in trust *329 for his two children. Petitioner's income from the operation of the public garage (Brine) and the parking lot (Markette) in 1958 and 1959 was as follows: 1958
Garage
Lot
Total
Income
$80,184.03
$65,300.69
$145,484.72
Expenses: Management
fee
$ 6,000.00
$ 6,000.00
Wages
32,309.69
$12,039.58
44,349.27
Other
7,456.31
800.87
8,257.18
Total expenses
$45,766.00
$12,840.45
$ 58,606.45
Profit before
"rent"
34,418.03
52,460.24
86,878.27
"Rent"
61,378.27
25,500.00 *
86,878.27
Profit or (loss)
($26,960.24)
$26,960.24
1959
Income
$84,591.84
$67,815.79
$152,407.63
Expenses: Management
fee
$ 6,000.00
$ 6,000.00
Wages
39,846.36
$13,565.03
53,411.39
Other
11,267.36
1,033.56
12,300.92
Total expenses
$57,113.72
$14,598.59
$ 71,712.31
Profit before
"rent"
27,478.12
53,217.20
80,695.32
"Rent"
55,195.32
25,500.00 *
80,695.32
Profit or (loss)
($27,717.20)
$27,717.20
It is stipulated that petitioner in 1958 and 1959 made payments to Brine Corporation and to Provident Mutual Life - mortgagee, on behalf of Brine Corporation as follows: 1958
1959
Brine Corporation direct
$42,565.27 *
$40,710.71 *
Provident Mutual Life -
on behalf of Brine Cor-
poration
18,813.00
14,484.61
$61,378.27
$55,195.32
*330 Petitioner operates several other parking lots under written lease agreements in addition to the parking lot here involved. Petitioner in its returns for 1958 and 1959 deducted the amounts of $61,378.27 and $55,195.32 as rental payments to Brine Corporation in the respective years. Respondent determined that petitioner was "not entitled to deduct as ordinary and necessary business expenses any amounts in excess of $34,418.03 and $27,478.12 respectively, for the years 1958 and 1959 for the continued use and possession of the property at 216 S. 15th Street, Philadelphia, Pennsylvania." Opinion Section 162(a)(3) of the Internal Revenue Code of 1954 allows as a business expense deduction "rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity." The basic inquiry is whether the disallowed amounts paid by petitioner to Brine Corporation *331 in 1958 and 1959 qualify as rental payment. During these years the petitioner operated a parking lot under a written lease from Markette Corporation and a public garage under a written lease from Brine Corporation. The Markette Corporation, lease called for a yearly rental of $25,500, which petitioner paid in 1958 and 1959. There is no dispute over the allowance of this deduction. The Brine Corporation lease explicitly called for a monthly rental that would be the amount remaining from the parking lot operation after a monthly management fee of $500 and the costs of operation and maintenance were deducted from gross receipts. The evidence shows this remainder was $34,418.03 in 1958 and $27,478.12 in 1959. Respondent does not question these amounts and allowed them as rental deductions to Brine Corporation in 1958 and 1959. But in addition to the payments to Brine Corporation of $34,418.03 in 1958 and $27,478.12 in 1959, the petitioner paid to or for the account of Brine Corporation an additional $26,960.24 in 1958 and $27,717.20 in 1959, which amounts were exactly petitioner's net earnings from its operation of the parking lot under the Markette Corporation lease. By this device *332 petitioner would show no taxable earnings in these years from its combined operations under these two leases. Petitioner's sole contention is that "the deduction taken by petitioner in 1958 and 1959 for rent paid to Brine was an ordinary and necessary business expense and should be allowed as such." There is nothing in the record to show that petitioner was required to pay these excess amounts to Brine Corporation for the use of property. No such requirement appears in either of the two written leases, which clearly spell out the rental requirements for both the parking lot (Markette Corporation) and the public garage (Brine Corporation). Respondent's witness testified that the fair rental value of the parking garage (Brine Corporation lease) on a term lease would be between $30,000 and $35,000 a year, with real estate taxes of about $7,400 payable by the lessor. The rental payments to Brine Corporation allowed by respondent were $34,418.03 and $27,478.12 for 1958 and 1959, respectively. These are the amounts required to be paid by petitioner under the very terms of its written lease with Brine Corporation. If these excess payments to Brine Corporation were allowed as rental deductions, *333 it would create the rather strange result of having the rental deductions to Brine Corporation in 1958 and 1959 be nearly twice petitioner's net earnings from petitioner's operation of the public garage under its lease with Brine Corporation. Since it is evident that petitioner fully met its rental obligations under both written leases for its use of the parking lot (Markette Corporation lease) and the public garage (Brine Corporation lease), we cannot understand how the excess payments to Brine Corporation can be regarded as rental payments under the statute. The testimony of petitioner's sole stockholder, Isador Sley, does not enlighten us. Isador's testimony, which was vague, was that there was some sort of oral agreement, in addition to the written lease agreements, that obligates petitioner to pay its earnings under the Markette Corporation lease to Brine Corporation. Isador's brother, Harry, who controlled both the latter corporations, also testified as to the purported oral agreement. Even if we can ignore the specific provisions of the written lease agreements, we do not see how a private oral agreement between the two brothers can turn these payments into rental payments. *334 We do not know the reason for the purported oral agreement. Harry testified that "[we] had no special purpose in mind" and that "[it] was just one of those things that we had done originally." However, we need not speculate whether the purpose of the oral agreement was to divert income from petitioner or for some other reason. Petitioner must point to some statute which provides for the allowance of this deduction and show that it comes within the terms of that statute. Petitioner has not done so. In Herbert Davis, 26 T.C. 49, this Court said that it was not necessary for us to determine whether such payments as may be in excess of those required, within the meaning of the statute, were in reality a gift, or a diversion of income, or whether the transaction was a sham. We further stated that "[we] need only inquire into the extent, if any, to which such payments were in fact in excess of what was required to be made as a condition to the continued use and the occupancy of the property." and "[to] the extent of any such excess, the payments are not deductible. * * *" There is some suggestion in the record that the "Lease Agreement" with Markette Corporation *335 was not a lease agreement at all but a management contract for the operation of the parking lot. We cannot believe that the parties involved were so inept that they intended to enter into a management contract for the operation of a parking lot and that, somehow, they managed to execute a lease agreement calling for rentals of $25,500 a year. Petitioner is doing nothing more than to completely rewrite its agreement with its lessor. It is of no significance here that revenue agents allowed similar deductions in prior years, and, in fact, petitioner on brief concedes that respondent is not estopped by the treatment of such items in prior years. We hold that petitioner is not entitled to a deduction for rental payments in 1958 and 1959 to Brine Corporation in excess of the amounts allowed by the respondent for those years. Decision will be entered for the respondent. Footnotes
*. Paid to Markette Corporation.↩
*. Includes year-end accounting adjustments made between petitioner and Brine Corporation in the respective amounts of $7,565.27 and $1,710.71.↩