ROLAND P. PLACE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 23079. Promulgated August 10, 1951.

*Robert M. Drysdale, Esq.*, for the petitioner.
*Norment Custis, Esq.*, for the respondent.

[2] Senate Finance Committee Report No. 831, 81st Cong., 1st Sess., 1949–2 C. B. 289.

OPINION.

ARUNDELL, *Judge:* The petitioner claimed a deduction of $24,938.34 in 1942 and $30,406.74 in 1943 as rentals paid his wife for the use of her property in a manufacturing concern owned and operated by him. The respondent has determined that these sums are excessive to the extent that they exceed $2,400 for 1942 and $1,000 for 1943, and that this excess was a gift.

The petitioner contends that section 23 of the Internal Revenue Code does not apply the limitation of reasonableness to deductions claimed for rents as it does in the case of wages and salaries and concludes that therefore the respondent was without authority to disallow part of the deduction as excessive. Petitioner' emphasizes that these sums were paid pursuant to a valid, written lease agreement.

The basic question is not whether these sums claimed as a rental deduction were reasonable in amount but rather whether they were in fact rent instead of something else paid under the guise of rent. The inquiry is whether the petitioner was in fact and at law "required" to pay these sums as rent. See section 23 (a) (1) (A)[1] of the Internal Revenue Code. When there is a close relationship between lessor and lessee and in addition there is no arm's length dealing between them, an inquiry into what constitutes reasonable rental is necessary to determine whether the sum paid is in excess of what the lessee would have been required to pay had he dealt at arm's length with a stranger. *Manos* v. *Commissioner*, 187 F. 2d 734; *Stanwick's, Inc.*, 15 T. C. 556, affd. (C. A. 4), June 25, 1951; *Limerick's, Inc.*, 7 T. C. 1129, affd. 165 F. 2d 483; *Hightower* v. *Commissioner*, 187 F. 2d 535: See *Commissioner* v. *Lincoln Electric Co.*, 176 F. 2d 815.

---

SEC. 23. DEDUCTIONS FROM GROSS INCOME.
  In computing net income there shall be allowed as deductions:
  (a) EXPENSES.—
    (1) TRADE OR BUSINESS EXPENSES.—
      (A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

Petitioner testified that the increased rental resulted from his unilateral determination rather than an arm's length agreement. He explained that in May 1942, when profits were increasing, he decided his wife was not receiving an adequate rental and consulted counsel. The one-sided nature of the transaction is further indicated by petitioner's testimony that he had at first decided to pay 50 per cent of the net profits as rental but after giving the matter further thought decided on 5 per cent less, which he thought should be kept by him as additional compensation. There is no evidence of the wife's dissatisfaction with the previous method of computing rent or that she at any time complained that $200 per month was inadequate.

The sums paid under this new arrangement totaled approximately $25,000 for the 12 months in 1942 and $30,000 for the 5 months in 1943, sums 10 to 30 times larger than the previously fixed rental. The total sum of approximately $55,000 paid in the 17-months' period is approximately equal to six times the value at which the property was carried on the books of the Place Company at the time of its dissolution in 1938, and is in excess of the price at which the property was sold in 1943 when, as petitioner testified, its value was substantially higher than it was in 1942, the year in which the new arrangement was instituted.

The payment of such large sums was anticipated since that was the admitted purpose of the new arrangement. It was put into effect in May 1942, when profits were increasing substantially, and was made retroactive to the first of that year.

When, as here, a taxpayer unilaterally determines during a period of rapidly increasing profits that he should pay a higher rental and on his own initiative institutes a new rental arrangement whereby he pays to his wife, as lessor, sums 10 to 30 times larger than the previous rental, it is incumbent upon him to establish that the sums were in fact rentals he would have been required to pay had he dealt at arm's length with a stranger. To do so, he must show that the sums were reasonable in amount. *Manos* v. *Commissioner, supra; Stanwick's, Inc., supra; Limerick's, Inc., supra; Hightower* v. *Commissioner, supra.* See *Commissioner* v. *Lincoln Electric Co., supra.* If the reasonableness of this or some lesser sum is not shown, then the sum respondent has determined to be the maximum petitioner would have been required to pay must stand when, as here, it is not patently inadequate.

Petitioner has not shown either that the sums paid or some other sum in excess of $200 per month was reasonable. Nor has he shown the value of these properties at the time the increased sums were paid. We cannot rely on his own self-serving testimony that the sums were reasonable in amount, or that the machinery was worth $25,000 in 1942. As we have previously pointed out, the sums paid were many times

larger than the previous rental and, within a 17-months' period, exceeded the price at which the property was sold in 1943. Petitioner made no attempt to support these opinions either by an explanation of the method by which he arrived at them or by corroborating testimony. The only testimony submitted by petitioner was his own.

We have not had the benefit of the advice of disinterested experts as to what in their opinion would be a fair rental or a fair valuation of the properties. There is no evidence of comparable rentals, or any explanation why this method of computation of the 45 per cent rate rather than some other method or a lesser or higher rate was selected by petitioner. Furthermore, we have been given an inadequate description of these properties, especially the machinery and equipment, which it seems were the most valuable.

The large volume of sales or the amount of profits earned during the period in question does not afford sufficient evidence of rental values. We are unable to determine the extent to which they were attributable to the rented machinery. Some of the machinery used by petitioner was owned by him and some was borrowed from a third party. In fact, petitioner used only the borrowed machines in the manufacture of plastic cigarette cases, which he began selling as early as 1938. In 1942, the year in which the increased payments occurred, petitioner began selling the cigarette cases to the United States Army through an agent. It may well be that this product or other products manufactured with machines other than those rented from petitioner's wife account for a substantial portion of the sales and profits.

Nor is the sale of the rented property for approximately $52,000 in June 1943 sufficient evidence of its value in 1942. Petitioner testified that the value of this property increased substantially between the time of the sale and the time of the new rental arrangement in 1942.

We are, therefore, unable to sustain petitioner in his contention that these sums are reasonable rentals he was required to pay for the continued use of the property, and we find no justification for disturbing the respondent's determination of what constituted a reasonable rental.

The petitioner has sought to shift the sums reported as rental expenses from his income to that of his wife on the alternative theory that his wife was a joint venturer with him, sharing the profits of the business. The basis of his contention is that the wife contributed the use of her property and shared in the profits. This theory has no support in the record. There is no evidence that the business was organized to carry out a specific venture, or was in any way something other than a continuing business, see *Fletcher* v. *Fletcher*, 206 Mich. 153, 172 N. W. 436; *Chase S. Osborn*, 22 B. T. A. 935, or that petitioner and his wife had any intention of becoming joint venturers, *Commissioner* v. *Culbertson*, 337 U. S. 733; *Thayer* v. *Augustine*, 55 Mich. 187,

20 N. W. 898. Petitioner admitted that he intended to enter into a lease agreement. With the advice of counsel, he entered into an agreement written in the terminology of a lease and referred to in the written document embodying it as a "lease." There was no collateral testimony or parol evidence to indicate that the agreement was anything other than what petitioner intended it to be and what it in fact purported to be.

Nor has petitioner submitted sufficient evidence of the normal attributes of a joint venture or partnership. The sharing of profits is not in itself sufficient. *Beecher* v. *Bush*, 45 Mich. 188, 7 N. W. 785; Michigan Statutes Annotated, Vol. 14, Section 20.7. In addition to the admitted absence of proper intent, there was no mutual interest in capital and no mutual sharing of losses. *Thayer* v. *Augustine, supra.* The wife had no control over the profits, no voice in the manner of conducting the business and was not subject to the liabilities incurred. *Gleichman* v. *Famous Players-Lasky Corp.*, 241 Mich. 266, 217 N. W. 43. Under these circumstances, it is clear that the wife's relation to the business was not that of a joint venturer.

*Decision will be entered under Rule 50.*