RAY'S CLOTHES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 41759, 45093–45095.   Filed September 30, 1954.

*Adrian Block, Esq.*, and *Isador Setel, Esq.*, for the petitioner.
*A. W. Dickinson, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* Respondent has determined that, for each of its fiscal years 1947 through 1950, petitioner may only deduct, under section 23 (a) (1) (A) of the 1939 Internal Revenue Code,[2] $10,000 of the rent paid the lessor corporation under a lease providing for annual rental payments of 6 per cent of gross sales, with a $10,000 minimum.

Lessor was formed to purchase the business property, 1901 Main Street, following an advantageous offer of sale thereof made to petitioner's sole stockholders, David and Seeberg, by the former owner of the business property. At the time of that offer, petitioner's business was then being conducted as a partnership, by David and Seeberg, on the leased ground floor and basement of the business property. Lessors' sole stockholders were David, Seeberg, and Seeberg's wife. David and Seeberg owned 75 per cent of the stock of the lessor corporation and, therefore, were in complete control of it, as they were of petitioner.

We think the determination of respondent except to the extent set out in our Findings of Fact and hereinafter discussed, is not sustain-

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In general.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or businees; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * *

able and that the cases cited in support thereof are distinguishable on their facts.[3]

In view of the stock ownership of lessor and lessee corporation, however, inquiry must be directed to the terms of the lease executed between lessor and petitioner on July 1, 1946. As this Court stated in *Jos. N. Neel Co.*, 22 T. C. 1083:

The qualified identity of interests between the * * * stockholders of the lessor * * * and the * * * stockholders of petitioner prevents the transaction in question from assuming an arm's-length character in the ordinary sense of the term. Thus, although a deduction for rent paid is not limited by the Code, as in the case of salary or compensation, to a "reasonable allowance," see *Stanley Imerman*, 7 T. C. 1030, under such circumstances as are here present a critical examination of all the evidence bearing upon the transaction involved, in the light of the situation known then to exist, is required to determine the true character of the item and to ascertain whether the rental arrangement was in fact sufficiently reasonable to achieve the same result as arm's-length dealings.

Or, to phrase it somewhat differently, it must be determined what rental petitioner, had it dealt at arm's length with a stranger, would have been "required" to pay "as a condition to the continued use or possession" of the property. Sec. 23 (a) (1) (A), *supra; Roland P. Place*, 17 T. C. 199, 203, affirmed per curiam (C. A. 6) 199 F. 2d 373, certiorari denied 344 U. S. 927. In the *Place* case, we said:

The basic question is not whether these sums claimed as a rental deduction were reasonable in amount but rather whether they were in fact rent instead of something else paid under the guise of rent. The inquiry is whether the petitioner was in fact and at law "required" to pay these sums as rent. * * * When there is a close relationship between lessor and lessee and in addition there is no arm's length dealing between them, an inquiry into what constitutes reasonable rental is necessary to determine whether the sum paid is in excess of what the lessee would have been required to pay had he dealt at arm's length as a stranger. [Citing cases.]

We further said, among other things, in deciding against the taxpayer in *Place, supra:*

We have not had the benefit of the advice of disinterested experts as to what in their opinion would be a fair rental or a fair valuation of the properties. There is no evidence of comparable rentals or any explanation why this method of computation of the 45 per cent rate rather than some other method or a lesser or higher rate was selected by petitioner. * * *

---

[3] The major cases relied on by respondent are *White* v. *Fitzpatrick*, (C. A. 2) 193 F. 2d 398 (in which the question concerned deductibility by a husband of payments made to his wife for the use of income producing properties which the husband had given as a gift to the wife but of which he had informally retained administrative control) ; *Shaffer Terminals, Inc.*, 16 T. C. 356, affirmed per curiam (C. A. 9) 194 F. 2d 539 (in which a corporation claimed deductions for rental of equipment it had sold to its sole shareholders and immediately leased back from them) ; and *Stanwicks, Inc.*, 15 T. C. 556, affirmed per curiam (C. A. 4) 190 F. 2d 84 (in which a husband leased business property for a flat rental, subleased it to his wife at the same rental, and his wife subleased it at a percentage rental to the taxpayer corporation which was wholly owned by the husband).

In the instant case, however, we do have the explanation for the making of the rental contract and the benefit of expert testimony as to the reasonableness of the rents which were to be paid under the contract. Therefore, a brief summary of the evidence particularly pertinent to the inquiry we have here to make is appropriate.

The business property consists of a building of 3 stories and a basement which is located on a corner lot in the center of probably the best retail mercantile district of Niagara Falls. It has a 38-foot frontage on the city's main business street, 90-foot frontage on an active side street, and extensive display window area. Niagara Falls is an industrial and tourist center on the Canadian border; visiting Canadians account for about 25 per cent of the city's retail trade.

Petitioner and its predecessor, the David and Seeberg partnership, occupied the first floor and basement of the building. Prior to 1946, petitioner's predecessor rented the building for $6,000 per year under a lease which was to expire January 1, 1948. In May 1945, the building's owner offered to sell it to David and Seeberg for $115,000 which, according to the uncontradicted evidence, was a low price for that property, and a contract of sale was signed after consulting with Isador Setel, an attorney versed in real estate matters. It was necessary to borrow $75,000 to finance the purchase. Setel discussed this with the president of a mortgage company and they, independently of David and Seeberg, concluded that petitioner's predecessor (later petitioner) should pay annual rent of 6 per cent of gross sales, with a $10,000 minimum, in order to secure the mortgage loan. David and Seeberg agreed on the proposed rent and an insurance company agreed to make the loan conditioned on the making of a lease containing the proposed rent.

Delay in clearing title postponed the transfer of the property for about a year, at which time the transfer was made for $115,655.09 to lessor corporation which was formed for that purpose by David and Seeberg. David and Seeberg also formed petitioner, which took over the partnership's men's wear business on July 1, 1946. A 10-year lease, dating from July 1, 1946, and containing the aforementioned percentage rental provision, was executed between lessor corporation and petitioner. The lease was assigned, along with a mortgage, to the insurance company which loaned the $75,000.

Setel, who was David's and Seeberg's counsel in the above dealings, the president of the mortgage company through which lessor corporation obtained the $75,000 mortgage loan, and two real estate men of long experience who were in no way connected with the transaction in issue, all testified that as of July 1, 1946, the making of percentage leases for retail stores was an accepted practice, that the business property in question was an excellent one, and that the percentage rate and

minimum provided in the lease for that property were fair and reasonable and in line with rentals charged similar businesses in that particular area. Setel also testified that, as of the time the rental was determined, he had two other clients who would have been willing to rent the property on those terms. Respondent, on the other hand, introduced no direct evidence and we do not believe that his cross-examination of the aforementioned witnesses or the other evidence present in the case impugns their testimony or would justify us in reaching a different conclusion from that which we have reached. *A. & A. Tool & Supply Co.* v. *Commissioner*, (C. A. 10) 182 F. 2d 300; *Roth Office Equipment Co.* v. *Gallagher*, (C. A. 6) 172 F. 2d 452.

We hold, therefore, that, except for the period July 1, 1946, through December 31, 1947, which will be discussed below, the rent prescribed in the percentage lease was reasonable and is what would have been arrived at had petitioner and lessor corporation been dealing at arm's length. Our conclusion is based upon the testimony mentioned in the preceding paragraph and our findings regarding the location and character of the business property and the rents actually being charged other stores in the particular area.

We are not, of course, unaware of the fact that the rental payments under the percentage lease were high in relation to the purchase price paid for the business property by the lessor corporation and that they were greatly in excess of the rents paid by petitioner's predecessor under the former lease. As regards comparative rents under the percentage lease and the former lease, it is noted first that the former lease was executed in 1938 when business conditions and property values in general were depressed compared with the period in which the percentage lease was negotiated and executed. Moreover, when 6 per cent of gross sales was determined as the measure of rent to be incorporated in the percentage lease, annual gross sales of petitioner's predecessor were around $300,000. Thereafter, annual sales jumped to around $500,000, resulting in rental payments considerably in excess of those originally contemplated. Such increases in rent with increases in business "is an accepted characteristic of a percentage lease," *Stanley Imerman*, 7 T. C. 1030, 1037, and is of no particular consequence when, as here, the percentage agreed upon has been found fair and reasonable. Neither is it necessary that such lease, so long as the terms are fair and reasonable, be particularly "beneficial" to petitioner. See *Stearns Magnetic.Mfg. Co.* v. *Commissioner*, (C. A. 7) 208 F. 2d 849.

Turning to a consideration of the period July 1, 1946, through December 31, 1947, the evidence, we think, compels a different conclusion. Petitioner's predecessor was operating under a lease which called for rent of $6,000 per year and was not due to expire until Jan-

uary 1, 1948. There is nothing in the record to indicate that such lease provided for termination either upon sale of the property by the former owner or upon change of the lessee from a partnership to a corporation. We therefore believe that petitioner could have availed itself of the benefits of that unexpired lease in an arm's-length transaction.

Instead of so doing, however, petitioner entered into the percentage lease to begin immediately instead of waiting for the expiration of the term of the old lease. No cash consideration or other concessions were received by petitioner for entering into that lease. Neither do the facts indicate that petitioner wished to assure itself a longer term of occupancy in order to justify contemplated capital expenditures or expansion of the business as in *Consolidated Apparel Co.* v. *Commissioner*, (C. A. 7) 207 F. 2d 580, reversing 17 T. C. 1570. And, we think also that no justification for petitioner's action is furnished by the possibility that lessor corporation might have encountered difficulty in obtaining a mortgage loan had the percentage lease not been executed to become effective without delay. Petitioner was not the lessor, it was the lessee. Under such circumstances we are of the opinion that, had petitioner and lessor corporation dealt at arm's length, petitioner would not have been "required" to pay rent in excess of $6,000 per year for the unexpired period (July 1, 1946, through December 31, 1947) of the lease in effect between petitioner's predecessor and the former owner of the business property. Cf. *Stanwick's, Inc.*, 15 T. C. 556, affirmed per curiam (C. A. 4) 190 F. 2d 84. Respondent, in fact, permitted rental deductions of $10,000 per annum for that period. He has not alleged that he erred in so doing nor has he asked for any increased deficiency.

Our decision results in the sustaining of respondent's determination for the 1947 fiscal year and in the disallowance of his determinations for the 1949 and 1950 fiscal years. For the 1948 fiscal year the rent deduction to which we hold petitioner is entitled is as follows:

| Period | Rent |
|---|---|
| July 1–December 31, 1947 | $3,000.00 |
| January 1–June 30, 1948 | 15,273.64 |
| Total | 18,273.64 |

The $3,000 represents one-half the annual rent provided for under the former lease. The $15,273.64 is 6 per cent of one-half of the gross sales reported in petitioner's return for the 1948 fiscal year. In the absence of evidence concerning what portion of the fiscal year's gross sales was actually made during January 1–June 30, 1948, we have determined that a pro rata apportionment thereof is the most appropriate.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

Baar, *J.*, dissenting: In my opinion the petitioner is entitled to deduct the full amount of the rental payable for the period from July 1, 1946, through December 31, 1947, in accordance with the terms of the new lease.

Withey, *J.*, agrees with this dissent.