O. Bee, Incorporated v. Commissioner.
O. Bee, Inc. v. Commissioner
Docket No. 71420.
United States Tax Court
T.C. Memo 1959-160; 1959 Tax Ct. Memo LEXIS 88; 18 T.C.M. (CCH) 695; T.C.M. (RIA) 59160; August 17, 1959
J. B. Fisher, Esq., Kanawha Valley Building, Charleston, W. Va., for the petitioner. W. Ralph Musgrove, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: The respondent determined deficiencies in petitioner's income tax and additions to tax under section 291(a) of the Internal Revenue Code of 1939 in the years and in the amounts as follows: Additions to Tax
Year
Deficiency
Sec. 291(a)
1950
$ 903.07
1951
5,542.90
$277.15
1952
4,293.45
1953
2,221.32
1954
472.43 The issues for decision are as follows: *89 (1) Whether petitioner is entitled to deductions for janitor services, casual labor, and laundry expenses; (2) Whether petitioner is entitled to deductions for interest expenses in the amounts of $235.79 and $66.88 in the years 1952 and 1953, respectively; (3) Whether petitioner is entitled to deductions for certain legal expenses in the years 1951 through 1954; (4) Whether petitioner is entitled to deduct the amounts of $800, $2,700, $2,300, and $3,000 for the years 1951, 1952, 1953, and 1954, respectively, as rental expenses; (5) Whether petitioner is entitled to a deduction for officer's salaries for Cora M. Burgher in the years 1950 through 1954; (6) Whether petitioner is entitled to bad debt deductions in the amounts of $1,199.50 and $25 in the years 1951 and 1952, respectively; (7) Whether the cost of certain repairs and replacements to the petitioner's business establishments are deductible as ordinary expenses or are capital expenditures subject to depreciation; (8) Whether petitioner is entitled to depreciation deductions in amounts greater than determined by respondent for the years 1950, 1951, and 1952; and (9) Whether petitioner is liable for the addition *90 to tax under section 291(a) of the 1939 Code for filing its 1951 income tax return late. Findings of Fact Petitioner is a corporation organized under the laws of West Virginia with its principal office at Charleston, West Virginia. It was organized on January 1, 1948, to take over certain business interests which had been operated as proprietorships by its president. These business consisted of a hotel, beer taverns, and restaurants. During the years in question, the petitioner's president and chief stockholder was O. B. Burgher. The petitioner's income tax returns for the taxable years 1950 through 1954 were filed at Parkersburg, West Virginia, on the cash basis. Petitioner's books of account were kept by a public accountant, Harold D. Bibb. His bookkeeping entries were made on the basis of information submitted to him at the end of each month. Some of the information was submitted in the form of daily record sheets from each of the business establishments, some consisted of receipts and invoices, and in certain instances information was reported verbally. Separate books were maintained for each business establishment. At the end of the year, the information from the separate *91 books was consolidated for the purpose of preparing the corporation's income tax return. The figures appearing on the returns were taken by the accountant from the general ledger accounts of the corporation's books. The accountant retained the daily reports and whatever substantiating invoices and receipts he had received and made all of them, except those for the year 1950, available to the respondent's agent in connection with the audit of the petitioner's income tax returns. The accountant had disposed of the invoices and receipts for 1950 prior to the audit. On the returns for the years 1950, 1951, 1952, and 1953, the petitioner deducted $515.50, $729.63, $481.77, and $761.76, respectively, as janitor expenses. The respondent has disallowed these amounts in their entirety. On its 1954 return, petitioner listed a deduction of $648.34 for "hauling trash and janitor," of which amount the respondent has disallowed $135. The information in regard to the expenses for janitor services was submitted to the accountant verbally. Petitioner does not have receipts or other substantiating evidence of the payments. The petitioner claimed deductions in the years 1951, 1952, 1953, and 1954 *92 in the respective amounts of $536.78, $158.56, $677.77 and $819.44 as expenses incurred for casual labor. The respondent has disallowed these amounts in their entirety. The information submitted to the accountant, in the form of daily reports, included amounts itemized only as expenditures for casual labor. No receipts or other substantiation to establish the actual expenditure were forwarded to the accountant. On its 1951 and 1953 income tax returns, the petitioner listed as a deduction for laundry expenses the amounts of $1,760.05 and $1,021.61, of which amounts the respondent disallowed $210.33 and $210.73, respectively. The information submitted to the accountant in regard to these expenditures consisted of the daily record sheet containing a notation as a total amount for laundry expenditures together with some laundry tickets. On the returns for the years 1951, 1952, 1953, and 1954, the petitioner claimed interest deductions of $1,408.33, $1,720.10, $1,380.58, and $1,236.01. Of these amounts, the respondent disallowed $45, $235.79, $66.88, and $45. However, the respondent has conceded the correctness of the amounts claimed as interest deductions for 1951 and 1954. For the *93 year 1953, the petitioner's books of account reflect the payment of interest on notes to various lending institutions in the aggregate amount of $1,380.58. Petitioner claimed deductions for legal expenses in the years 1951, 1952, 1953, and 1954 in the respective amounts of $529.73, $465, $175, and $1,030. The petitioner's books of account reflected the payment of legal fees in these amounts in each of the years involved. The respondent disallowed the amounts in their entirety. However, the respondent has since agreed that $500 was properly deductible as legal expense in 1954. On its returns for the years 1951, 1952, 1953, and 1954, the petitioner deducted rental expenses of $8,800, $12,600, $13,825, and $16,950, respectively. Of these amounts, respondent has disallowed $800, $2,700, $2,300, and $3,000, respectively. During the years in question, the petitioner's businesses known as Pastime Cafe and Henry Clay Hotel occupied leased premises. In August 1951, the petitioner's president, O. B. Burgher, in his individual capacity, purchased the property occupied by these two businesses and thereafter continued to lease the same premises to the petitioner. Immediately upon his acquisition *94 of the property, Burgher increased the rental on the premises occupied by the Pastime Cafe from $150 a month to $300 a month. At the same time, he increased the rental on the hotel premises from $300 per month to $350 per month. These increased rentals continued in effect throughout the remainder of the taxable years in question. On its income tax returns for the years in question, petitioner deducted amounts purporting to be officer's salaries for Cora M. Burgher, wife of the petitioner's president. She was variously listed on its returns as vice-president or secretary-treasurer. It was stated on the returns that for the years 1950, 1951, and 1952 she devoted 50 per cent of her time to the business affairs of the petitioner. In 1953 and 1954, it was reported that she devoted 100 per cent of her time to the petitioner's business. The petitioner claimed a deduction of $3,000 per year for each of the years 1950 through 1953, and $2,300 for the year 1954, as compensation for her services. These amounts have been disallowed by the respondent. Cora M. Burgher was at the Henry Clay Hotel occasionally, but she was never on its payroll. On its income tax return for the year 1951, petitioner *95 listed a bad debt deduction in the amount of $1,199.50, specifying that it was a loan to a business known as Idle Hour, Inc. The deduction was disallowed by the respondent. The petitioner's books of account show that on September 15, 1949, it advanced to Idle Hour, Inc., $75.50 to pay incorporating expenses; that on March 31, 1950, it loaned O. B. Burgher $500 for Idle Hour, Inc.; that on April 15, 1950, Burgher loaned Idle Hour, Inc., $600; and that on June 30, 1950, petitioner paid the sum of $24 to a bank in connection with a forged check cashed by the manager of Idle Hour, Inc. Petitioner claimed a bad debt deduction in the amount of $489.93 for the year 1952. The deduction was disallowed by the respondent. The amount was composed of checks which had been written to O. B. Burgher and then endorsed by him to the petitioner. Petitioner had turned them over to a beer company in payment for merchandise, and the checks had been returned to petitioner unpaid because of insufficient funds. In 1951, petitioner replaced old plumbing and sewer lines, replaced some flooring, installed sinks under the lunch counter, and did some painting at the Little Drake Inn for a total cost of $1,425.93. *96 In the same year, the petitioner also expended $1,892.68 on painting, replacing part of flooring, and plastering the walls of a brick apartment and storeroom building owned by it. These two amounts were deducted on petitioner's 1951 return as repair expenses and were disallowed by the respondent. On its 1951 return, petitioner had deducted a total of $4,088.07 as the cost of repairs. On its 1951 income tax return, petitioner also claimed a deduction of $539.89 as "Miscellaneous Expenses". The deduction was disallowed by the respondent. According to the accountant's journal entries, the expenditure was composed of $425 cash advanced for the reopening of the Kanawha Grill upon the foreclosure of a deed of trust of Fred Pantuso, and the remaining amount of $114.89 was recorded as the cancellation of an outstanding note on the Kanawha Grill. On its 1952 income tax return, the petitioner claimed a deduction in the amount of $2,472.98 for repairs. Of this amount, $553.18 represented a series of expenditures in connection with painting and papering work done at the hotel. The respondent disallowed $720.18 of the claimed deduction. On its 1953 return, petitioner claimed a deduction of *97 $3,297.82 for repairs of which amount the respondent disallowed $264.64. The latter amount is shown on petitioner's 1953 books as expenditures for paint and labor at the Blue Ridge Lunch. In 1942, O. B. Burgher, individually, purchased the business known as the Henry Clay Hotel. He paid $1,800 for the furniture and fixtures. Although he added no additional furniture and fixtures, he set them up on the petitioner's books in 1948 as having a cost basis of $4,000. Depreciation was then computed on this amount on the basis of a ten-year life. Petitioner's 1951 income tax return was filed on March 19, 1952. Opinion (1) Janitor services, casual labor, and laundry. - According to petitioner's accountant who prepared the tax returns in question, the amounts claimed as expenses for janitor services were reported to him verbally. O. B. Burgher testified that these expenses were reported on the daily record sheet, although no such sheets are in evidence. The accountant had no direct knowledge of the payments in question. There is no documentary evidence substantiating the payments. The testimony of Burgher, petitioner's chief officer and shareholder, with respect to these expenses was *98 vague and general. The petitioner has not established that the respondent erred in disallowing the expenses for janitor service. While the expenses for casual labor were reported to the accountant on the daily record, he had no receipts or other substantiation of the expenditures and there are none in evidence. The daily records themselves are not in evidence. There was no testimony at the trial in support of the expenditures. In the light of the evidence, or lack of it, the respondent's determination with respect to the claimed deductions for expenses of casual labor must be sustained. As we have found, the respondent disallowed only a small portion of the laundry expenses claimed for 1951 and 1953. There are apparently a number of laundry tickets in existence with respect to those years. However, the tickets themselves are not in evidence. We are unable to determine the extent to which the claimed expenditures are supported by such tickets. There is no evidence to substantiate the disallowed expenditures, and the respondent's determination with respect to them is sustained. (2) Interest. - The only remaining issue as to interest deductions involves amounts claimed in 1952 and *99 1953. With respect to 1952, the petitioner offered no evidence whatsoever as to the claimed interest deduction, and the respondent's determination in that respect is sustained. While the petitioner's books reflect interest payments in 1953 in the amount of $1,380.58, there is no evidence to establish the existence, purpose, or nature of the particular indebtedness giving rise to the $66.88 interest expense in issue. Under the circumstances, the respondent's determination in this regard must be sustained. (3) Legal expenses. - According to the accountant's testimony, a number of the actual payments for legal services in question were made by checks drawn by himself on instruction. However, he testified that he had no personal knowledge of the nature of the services for which payments were made. With respect to all of the payments in question, the record is void of evidence either as to the nature of the services involved or as to the relationship of the particular service to the business of the petitioner. Under these circumstances, the determinations of the respondent with respect to legal expenses must be sustained. As we have found, the respondent has conceded the deductibility *100 of $500 in legal fees in 1954. (4) Rental expense. - In 1951, the petitioner's chief officer and shareholder, O. B. Burgher, in his individual capacity, purchased the building in which the operations of the petitioner's hotel and one cafe were conducted. Immediately upon the purchase of the property, Burgher increased the rent on the cafe premises from $150 to $300 per month and increased the rent on the hotel premises from $300 to $350 per month. When there is a close relationship between the lessor and lessee and there is no arms-length dealing between them, an inquiry into what constitutes a reasonable rental is necessary to determine whether the sum is in excess of what the lessee would have been required to pay had he dealt at arms-length with a stranger. Otherwise, the payments may be something else paid under the guise of rent. Roland P. Place, 17 T.C. 199, 203 (1951), affd. 199 Fed. (2d) 373 (C.A. 6, 1952). The evidence shows that prior to August 1951, when the petitioner presumably was dealing at arms-length with a stranger, it was paying $150 and $300 monthly for the cafe and hotel premises, respectively. When there is an absence of arms-length *101 dealing and a taxpayer unilaterally determines that it should pay higher rentals, it must prove that the increased amounts are reasonable. Roland P. Place, supra. The only evidence offered by petitioner relative to the reasonableness of the increased amounts was the self-serving statements of Burgher, petitioner's chief officer and shareholder, who is also the owner of the property in question. This type of evidence was rejected in the Place case. In that case the Court, in holding that the petitioner had not shown that the rental was reasonable, noted that there was nothing to show the value of the property; that no opinion testimony of disinterested persons as to fair rental value had been adduced; and that an inadequate description of the property had been given. Likewise, in the present case the value of the property has not been shown. Petitioner did not call disinterested witnesses to testify as to fair rental value. Neither did petitioner's witnesses offer any description of the property. Petitioner did not produce the lease agreement. Burgher testified that he charged the hotel rent which was comparable to the rent charged another hotel with a similar number *102 of rooms in the immediate vicinity. There was no corroboration of his testimony in this regard, nor did he describe his property as to type and detail of construction, or the type and detail of construction of the so-called comparable property. Under the circumstances, Burgher's testimony is not sufficient to establish that the alleged rental payments were reasonable. The respondent's determination must be sustained. (5) Officer's salaries. - When a deduction is claimed for compensation paid a close relative, the arrangement is properly subject to searching scrutiny. L. Schepp Company, 25 B.T.A. 419, 429 (1932). Here, Cora Burgher is the wife of the petitioner's president and chief stockholder. Cora testified that she was employed full time by the petitioner during all of the years 1950 through 1954. It would serve no useful purpose to review in detail the evidence with respect to this alleged employment. Suffice it to say, the evidence in this regard is conflicting, vague, and uncertain. Such testimony as the petitioner presented in support of the claimed deduction did not impress the Court with its reliability. Under the circumstances, the determination of the *103 respondent with respect to Cora's salary in each of the years is sustained. (6) Bad debts. - On its 1951 return, the petitioner claimed a bad debt deduction in the amount of $1,199.50, specifying that it had made a loan to a business known as Idle Hour, Inc., and that the business had failed. The respondent determined that the amount in question had been loaned by the petitioner to its principle stockholder, O. B. Burgher, and that he in turn had loaned the amount to Idle Hour, Inc. The respondent determined, therefore, that since the amount was owed by the petitioner's shareholder it could not be considered worthless and the amount was not deductible. In the year 1952, petitioner claimed bad debt deductions in the amount of $489.93. Respondent also determined that this amount was not deductible since it was the debt of petitioner's principle shareholder. In its petition, the petitioner alleged error only with respect to $25 of the amount disallowed for 1952. Therefore, the remaining amount is not before the Court for decision. United Business Corporation of America, 19 B.T.A. 809, 831 (1930), affd. 62 Fed. (2d) 754 (C.A. 2, 1933), certiorari denied *104 290 U.S. 635 (1933). A deduction is allowable for debts which become worthless within the taxable year. Section 23(k)(1), Internal Revenue Code of 1939. To become entitled to a deduction for bad debts, petitioner must show that the alleged bad debt had some value when received, and that it become worthless within the taxable year. In response to a question as to whether the petitioner actually loaned the money to Idle Hour, Inc., or whether petitioner loaned it to him, O. B. Burgher responded, "I don't recall." Bibb, the accountant, stated that his records showed that the checks were written to Burgher as a loan on behalf of Idle Hour, Inc. The respondent's disallowance of the bad debt deduction for 1951 is sustained. The accountant was unable to find the bookkeeping entry with respect to the bad debt deduction of $25, the amount remaining in issue for the year 1952, and there is no evidence in the record with respect to that amount. Thus, the respondent's disallowance of any bad debt deduction for 1952 is sustained. However, even if the entire amount of $489.93 for the year 1952 were before us for consideration, the petitioner has not shown that it is entitled *105 to a bad debt deduction for any part of the amount. Bibb testified that the amount was composed of worthless checks which had been made payable to Burgher who then turned them over to petitioner. The latter used them to pay a beer company for merchandise, and the checks were later returned to petitioner uncashed because of insufficient funds. This testimony would establish that the loss, if any, was Burgher's, rather than petitioner's, since the alleged bad checks were issued to him. (7) Repairs. - In 1951, 1952, and 1953, the petitioner claimed deductions for certain miscellaneous expenses and repairs. These deductions were disallowed by the respondent and held to be capital expenditures subject to depreciation. The first item in question was claimed as a deduction in 1951 under the heading "Miscellaneous Expenses". The only evidence offered by the petitioner with respect to the item was the testimony of its accountant in regard to what his book entries reflected. He had no personal knowledge of the nature of the expenditures. According to his journal entries, the item was composed of $425 cash advanced for the reopening of the Kanawha Grill upon the foreclosure of a deed of trust *106 of Fred Pantuso, and the remaining amount of $114.89 represented the cancellation of an outstanding note on Kanawha Grill. Beyond these book entries, the record does not show the specific purpose of each of these expenditures. Therefore, with respect to the $425, there is clearly no evidence which would justify our holding the respondent's determinations to be in error. In the case of the $114.89, it would appear that the expenditures were incurred to perfect title to the Kanawha Grill property and, thus, prohibited as a deduction by Regulations 111, sec. 29.24-2, which provides that the cost of perfecting title to property constitutes a part of the cost of the property and is not deductible. With respect to the deductions claimed for repairs on the 1951 return, the record does not show that the respondent's determination that they were capital expenditures subject to depreciation is in error. The petitioner's accountant gave a breakdown of the expenditures as reflected by his books, but stated that O. B. Burgher would have to testify as to the nature and purpose of such expenditures. Burgher gave an item by item designation as to the purpose of each expenditure. However, even if *107 his testimony is accepted at face value, it is not sufficient to overcome the correctness of the respondent's determination. Burgher testified that the expenditure of $1,425.93 in 1951 was for replacing old plumbing and sewer lines, painting, replacing flooring, and installing sinks under the lunch counter at Little Drake Inn. The remaining $1,892.68 in issue in 1951 was reportedly spent for painting, replacing part of the floor and plastering the walls of a brick apartment and storeroom building owned by petitioner. While some of the items were very small in amount so that on their face they would hardly seem to be capital in nature, it was apparent that such items were but components of considerably larger jobs. In any event, Burgher's characterizations of the various items as being for papering, plastering, painting, flooring, and for similar purposes, are not necessarily inconsistent with respondent's determination that they were in the nature of permanent improvements. Burgher was not questioned in regard to the items of $720.18 and $264.64 repair expense deductions disallowed by the respondent for the years 1952 and 1953, respectively. The record does not disclose the nature *108 or extent of repair or replacement involved in such expenditures. The respondent's determinations with respect to the claimed repair items are sustained. (8) Depreciation. - The respondent made certain adjustments to the depreciation deductions claimed by the petitioner for all of the taxable years in question. Petitioner has alleged error only as to the disallowance of $410.87, $281.59, and $779.27 in the years 1950, 1951, and 1952. At the trial, petitioner introduced no evidence as to 1950 and 1952 with respect to this issue. In the absence of such evidence, the respondent's determination is sustained as to those years. With respect to 1951, the accountant stated the cost basis of the various assets as shown on his records, and the number of years useful life he used in computing the depreciation claimed for that year. He did not explain the source of his information as to cost or the basis of his determination of the number of years of useful life of the particular assets in question. Evidence established that Burgher acquired the furniture and fixtures of the Henry Clay Hotel in 1942 at a cost of $1,800. However, the depreciation schedule attached to the returns shows that *109 these assets were set up on the petitioner's books at $4,000 and depreciation claimed on the basis of ten years useful life, or $400 per year. The respondent determined that the cost of the assets had been recovered through depreciation prior to the years in question and, therefore, no depreciation was allowable. Petitioner offered no evidence to refute this determination. In order to be entitled to a deduction for depreciation, a taxpayer must furnish full and complete information with respect to cost or other basis of the assets, their age, condition, remaining useful life, and the portion of the cost or other basis recovered in prior years. Regulations 118, sec. 39.23 (1)-5; Hamilton & Main, Inc., 25 T.C. 878, 883 (1956). The petitioner's evidence in this case does not meet any of these requirements. On the basis of the record, the petitioner has not proved that it is entitled to depreciation deductions in the amounts of $410.87, $281.59, and $779.27 for the years 1950, 1951, and 1952, respectively. (9) Addition to tax. - The petitioner's 1951 income tax return was not filed until March 19, 1952. The respondent asserted the addition to tax under section 291(a) *110 of the 1939 Code for delinquent filing of the return. The petitioner did not offer any evidence at the trial in respect to this issue. It has failed to show that the delinquent filing was due to reasonable cause. The only evidence of record shows that the return was filed late. Therefore, in the absence of showing that the failure to file on or before the statutory filing date of March 15, 1952, was due to reasonable cause, the respondent's determination is sustained. Decision will be entered under Rule 50.