PRESTON W. CARROLL and DOROTHY CARROLL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; PRESTON CARROLL COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carroll v. Commissioner
Docket Nos. 2183-77, 2877-79, 15865-79.
United States Tax Court
T.C. Memo 1987-57; 1987 Tax Ct. Memo LEXIS 53; 52 T.C.M. (CCH) 1523; T.C.M. (RIA) 87057; January 27, 1987. Mark H. Westlake, for the petitioners. Robert J. Shilliday, Jr., for the respondent. SCOTT
MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax under section 6653(a) [1] for the years and in the amounts as follows: Additions
Docket
to Tax
Number
Petitioner
Year Ended
Deficiency
Sec. 6653(a)
2183-77
Preston W.
12/31/72
$237,884.65
$11,894.23
and Dorothy
Carroll
12/31/73
155,060.81
7,753.04
2877-79
Preston W.
12/31/74
395,991.46
and Dorothy
Carroll
15865-79
Preston Carroll
7/31/70
6,709.08
Company
Inc.
7/31/71
180,033.16
7/31/72
129,350.69
7/31/73
334,016.61
7/31/74
189,418.55
*54 The deficiencies determined against the individual petitioners arose from the disallowance of rental expense deductions claimed by Preston Carroll Construction Company (construction company), a sole proprietorship, resulting from the lease of certain construction equipment from Preston Carroll Company, Inc. (corporation). For the year 1974, respondent also determined that in 1974 the individual petitioners had income from forgiveness of indebtedness because they did not pay to the corporation the full rental required by the lease. Respondent disallowed the deductions for rental expense to the individual petitioners because of his determination that the lease agreement lacked economic substance. Respondent made this same determination for the years 1969, 1970 and 1971. Those years were involved in the case of Carroll v. Commissioner,T.C. Memo. 1978-173. In that case we held that the transfer of the equipment to the corporation and *55 lease back by the proprietorship should be recognized for tax purposes and the claimed rental payments were allowable business expense deductions. After the decision in Carroll v. Commissioner,supra, respondent amended his answer to allege in the alternative that for 1972 and 1973 a forgiveness of indebtedness to the individual petitioners occurred by the payment by the proprietorship of less than the rental called for under the lease. Petitioner, Preston Carroll Company, Inc., amended its petition to claim an offset to its alleged deficiencies for the years in issue with net operating loss and investment tax credit carrybacks sustained in subsequent years. Respondent subsequently amended his answer to allocate additional income to the individual petitioners, Preston W. Carroll and Dorothy Carroll, under section 482 and section 1.482-2(c), Income Tax Regs., and in this amendment respondent abandoned all his prior positions with respect to the equipment rental issue. Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for decision: (1) whether the rental expense deductions of Preston *56 W. and Dorothy Carroll for 1972, 1973 and 1974 should be decreased based on the arm's-length standards of section 482, and (2) whether the addition to tax for negligence under section 6653(a) [2] should be imposed based upon the overstatement of rental expenses by Preston W. and Dorothy Carroll on returns for 1972 and 1973. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Preston W. and Dorothy Carroll, husband and wife (petitioners), resided in Clifton, Tennessee, on the date their petitions were filed. Petitioners filed joint Federal income tax returns for the taxable years 1972, 1973 and 1974 with the Internal Revenue Service Center at Memphis, *57 Tennessee, and filed amendments to their 1972 and 1973 returns. The corporation had a principal place of business in Clifton, Tennessee on the date its petition was filed. The corporation filed corporate income tax returns for its taxable years ended July 31, 1970, through July 31, 1975, with the Internal Revenue Service Center at Memphis, Tennessee. The individual petitioners, the corporation, and the construction company, used the cash method of accounting in computing income, deductions, and expenses. The construction company used the percentage of contract completion method of accounting in computing its profit from long-term contracts. From 1952 through December 31, 1974, petitioner operated Preston Carroll Construction Company as a sole proprietorship. During the years in issue the construction company was engaged primarily in the construction of underground utility lines and utility plants such as sewer lines and sewage treatment plants. The corporation was incorporated on January 10, 1969, with petitioner as president, treasurer and sole shareholder. Petitioner subscribed to 100 shares of the capital stock of the corporation and agreed to pay $1,000 for this stock. *58 Petitioner could not immediately transfer the construction business to the corporation because some municipalities required corporations bidding on these types of projects to have been in existence for 5 years. Consequently, petitioner formed the corporation with a view towards transferring the business to it on the expiration of the requisite time period. Petitioner was limited in which jobs he could bid upon by his performance bonding capacity, which by the latter part of 1968, was $6 million total, $2 million for any single project. In order to bid upon larger jobs, petitioner desired an increased bonding capacity. Petitioner's then current bonding company suggested that it would increase his limit if he was able to obtain at least $600,000 in long-term financing. In December of 1968, petitioner secured an 18-month loan for $1,005,597.22 from First American National Bank (First American) at a 6.5 percent interest rate.Petitioner placed $1 million dollars in a 4 percent certificate of deposit. The certificate was not used as security for the loan. However, his bonding company, as did other prospective companies, refused to increase his limit due to the construction company's *59 accounting methods and lack of working capital. Subsequent to incorporating the corporation, United States Fidelity and Guaranty Company (USF&G) authorized two individual performance bonds for the construction company. However, USF&G would not commit itself to a firm bonding program. On August 1, 1969, petitioner transferred certain construction equipment having a stated book value of $801,069.08, and certain notes payable in the aggregate amount of $760,986.02 to the corporation in exchange for the 100 shares of the capital stock of the corporation. The unadjusted original cost of the equipment at the date of transfer was $2,414,498.75 and the accumulated depreciation through that date was $1,613,429.87. The net book equity that petitioner transferred for the 100 shares of the corporation stock was $40,069.08. [3]
*60 On August 1, 1969, the corporation leased the construction equipment which had been transferred to it from petitioner back to the construction company for a term extending from August 1, 1969 through December 31, 1971, in exchange for a rental payment of $2,500,148. Industry practice was for the lessee to perform operating maintenance. The fixed term lease in issue required the lessee to keep the equipment in good operating condition and thus conformed to industry practice in this respect. On January 2, 1972, the lease agreement dated August 1, 1969, was extended by the corporation and the construction company and as extended provided that either party could cancel the lease upon 90 days' written notice. The amount of rental to be paid under the amended and renewed lease was $1,034,544 a year which was the same on a yearly basis as the rental payment provided under the original lease. On August 1, 1969, 245 items of equipment became subject to the lease agreement. Sixty-three items of equipment were acquired by the corporation subsequent to August 1, 1969, but prior to December 31, 1970. As of December 31, 1971, the corporation had an inventory of 328 items of equipment. *61 The corporation attached to its financial statements lists of equipment subject to the lease agreement as amended as of December 31, 1972, December 31, 1973 and December 31, 1974. On January 1, 1975, petitioner transferred the assets and liabilities of the construction company to the corporation, and the corporation assumed all the construction contracts of the construction company. This transfer effectively canceled the lease agreement. From August 1, 1969, through December 31, 1974, the business of the corporation was the renting of its equipment to the construction company. Neither petitioner nor the construction company paid any interest to the corporation at any time and neither petitioner nor the construction company paid all of the accrued rental. Petitioner determined his rental rate by compiling a list of the equipment leased and applied the AED [4] rate to what he estimated was the equipment's value. After considering the specific equipment, its condition, its location, and amount of time it was to be used, he reduced the AED rate by 50 percent to compute a monthly rental value of $86,000. *62 The rental rates remained the same following renewal in 1972 in spite of acquisitions and dispositions of some equipment and the increased age of the remaining equipment because outside appraisals convinced petitioner that the rate charged was fair for that type of equipment. Even though the lease called for the same rental rate, petitioner paid less than the amount called for in some of the years in issue. For the taxable years ended July 31, 1970, through July 31, 1975, the construction company paid to the corporation the following amounts of rent for the equipment: Rent Paid
Rent Required
Deficit
July 31, 1970
$1,034,544.00
$1,034,544.00
July 31, 1971
681,695.53
1,034,544.00
352,848.47
July 31, 1972
788,496.59
1,034,544.00
246,047.41
July 31, 1973
718,960.00
1,034,544.00
315,584.00
July 31, 1974
628,527.18
1,034,544.00
406,016.82
July 31, 1975
173,509.93
1,034,544.00
861,034.07
Total
$4,025,733.23
$6,207,264.00
$2,181,530.77
The lesser amounts of rent reflected a deduction for the downtime of the equipment. For some 21 years prior to the trial, petitioner owned an equipment business where he had been involved in buying, *63 selling, trading and using equipment comparable to that used by the construction company. Petitioner was familiar with different categories of equipment and their capabilities. Petitioner had outside appraisals made of the equipment because his bonding company requested opinions other than his own. The two outside appraisals came up with substantially the same fair market rental values as petitioner had determined. An independent third party, George Weesner, a Nashville construction equipment dealer, determined a rental rate for a fixed term lease with no purchase option where the lessee was responsible for maintenance by looking at the character of the equipment and its intended use. His rental rate would be not less than 3 percent per month of replacement cost at the time the lease was drawn up. Respondent in his second amendment to the answer proposed to reallocate rental expense deductions pursuant to section 482 and section 1.482-2(c), Income Tax Regs. For 1972 and 1973, respondent proposed to increase the individual petitioners' income by $241,138.94 and $132,064.06, respectively, due to the disallowance of claimed rental expenses in excess *64 of an arm's-length rental charge. For the same reasons, respondent proposed to increase the individual petitioners' 1974 income by $17,335.69. Petitioners contend that should the rental expense deductions be so reallocated, petitioners are entitled to additional deductions representing the amount of rent set forth in the lease but not paid. OPINION While respondent's determinations are presumptively correct, ordinarily leaving the burden of proof on petitioner, Welch v. Helvering,290 U.S. 111 (1933), where respondent raises an issue in his answer and amendment to his answer, he has the burden of proof. Rule 142(a), Achiro v. Commissioner,77 T.C. 881 (1981). Respondent first alleged the allocation under section 482 by way of amendment to answer, therefore the burden of proof is on respondent to establish all the elements necessary to support his allocation under section 482. Achiro at 891. Petitioner, however, has the burden of proof on the addition to tax for negligence issue. *65 Section 482[5] authorizes the Secretary or his delegate to allocate income, deductions, credits or allowances between or among commonly owned or controlled organizations, trades or businesses when it is determined necessary to clearly reflect income or prevent the evasion of taxes. [6] The purpose of section 482 is not however to punish related corporations or organizations, but rather to insure that each reflects its true income. Your Host, Inc. v. Commissioner,58 T.C. 10, 24 (1972). *66 In this case the allocation was made with respect to rental deductions taken by the petitioner for construction equipment leased by the corporation to the construction company. Respondent's section 482 allocation is made under section 1.482-2(c), Income Tax Regs., dealing with the use of tangible property. [7] That subsection authorizes the District Director to make allocations to reflect an arm's-length charge when tangible property owned by one member of a group of controlled entities is transferred by lease to another member of the group at a charge not equal to an arm's-length rental charge. Section 1.482-2(c)(2)(i), Income Tax Regs., defines arm's-length rental charge as -- the amount of rent which was charged, or would have been charged for the use of the same or similar property, during the time it was in use, in independent transactions with or between unrelated parties under similar circumstances considering the period and location of the use, the owner's investment in the property or rent paid for the property, expenses of *67 maintaining the property, the type of property involved, its condition, and all other relevant facts. * * * *68 On the basis of the record in this case we find the rental charge set forth in the lease to be a fair rental value. Therefore, respondent's proposed allocation under sections 1.482-2(c)(1) and 1.482-2(c)(2)(i), Income Tax Regs., is inappropriate. Cf. Fegan v. Commissioner,71 T.C. 791, 805-807 (1979), affd. without published opinion (10th Cir. 1981). Respondent also proposed an allocation under section 1.482-2(c)(2)(ii) of the regulations, which computes a fair rental value by an arithmetic formula. Because we conclude that the rental charged by the corporation represents a fair rental charge we need not address respondent's proposed allocations under section 1.482-2(c)(2)(ii) of the regulations. [8]
*69 Petitioner argues that his testimony and the testimony of Mr. Weesner support the reasonableness of the rental payments made by petitioners to the corporation. Respondent argues that the amount of rent specified by the lease does not represent an arm's-length charge for the equipment. Petitioner described in detail the process by which he computed his rental rate of approximately $1,035,000 per year. To reach this amount, he identified the assets subject to the lease and assigned each piece of equipment a rental rate from the AED compilation of rental rates. As petitioner noted, he adjusted that total rental amount by 50 percent to reflect the expected wear and tear on the equipment and the age and capabilities of the particular equipment involved. [9] Respondent argues specifically that petitioner had no plausible explanation for this reduction and that his methodology in computing his rent was incredible. In Carroll v. Commissioner,T.C. Memo. 1978-173, we accepted this explanation and there is nothing in this record to show that we should reach a different conclusion.
*70 Petitioner's estimate of fair rental value was supported by his knowledge, experience, familiarity with the equipment involved and inquiry into the applicable fair rental values. Petitioner, being directly the owner of the property prior to its transfer to the corporation and indirectly the owner following that transfer, possessed sufficient knowledge of the property to testify to its reasonable rental value. See A. & A. Tool & Supply Co. v. Commissioner,182 F.2d 300, 303-304 (10th Cir. 1950). This testimony provided the Court with substantial evidence from which we could conclude that approximately $1,035,000 was a reasonable rental value. Respondent argues petitioner's testimony is unsupported by independent evidence stating how he computed the rental charge and how he concluded that the rent was reasonable, and therefore fails to meet petitioner's burden of proof on this issue. Respondent apparently fails to note that it is he who has the burden on this issue. Respondent also fails to recognize the rebuttal testimony of Mr. Weesner as providing independent evidence of an arm's-length rental charge. That testimony does in fact both support petitioner's *71 conclusions and provide evidence of the rent which would have been charged in an independent transaction between unrelated parties. Mr. Weesner, relying on his nearly 50 years' experience in the equipment sales and rental business, testified that considering the lease term, lease maintenance provisions and type of equipment involved, he would charge a rental rate of approximately 3 percent of the replacement cost at the time the lease was entered. We accept his testimony that replacement costs might be greater than original costs based on the general economic conditions in the late 1960's and early 1970's. We find Mr. Weesner's testimony highly credible and conclude that he did, in fact, have a "feel for the market." His testimony was relevant to our determination that the rental charge determined by petitioner reasonably reflected the amount that "would have been charged for the use of the same or similar property, during the time it was in use, in independent transactions with or between unrelated parties under similar circumstances considering the period and location of the use, the owner's investment in the property or rent paid for the property, expenses of maintaining the *72 property, the type of property involved, its condition, and all other relevant facts." Section 1.482-2(c)(2)(i), Income Tax Regs. Application of Mr. Weesner's 3-percent figure to the original unadjusted cost basis would yield a yearly rental charge of approximately $1,200,000. [10] As respondent notes, this amount is merely what Mr. Weesner would have asked for, there being no evidence whether or not another party would pay this amount. However, petitioner's computation was in substantially the same range, in fact slightly less than this amount. The determination of an arm's-length charge is an inexact science and of necessity reflects the amount two individual parties would agree to based on their negotiations. We find it likely that petitioner would have agreed to a price similar to that computed by Mr. Weesner. The lesser amount computed by petitioner reflects the fact that some of his equipment was obsolete at the time the lease was entered into, a circumstance under which Mr. Weesner would seek a return of 3-percent of fair market value rather than 3 percent of replacement cost. *73 Respondent contends that Mr. Weesner likely had to accept rental rates substantially less than his requested 3 percent of replacement cost amount. However, Mr. Weesner testified he either priced in a competitive market or did not lease the equipment at all, in which case he would dispose of the equipment. While he may not have always received the 3-percent figure, he did not rent at all if the price was too low. We are aware that close scrutiny is called for when we are faced with transactions between controlling shareholders and their corporation, Ingle Coal Corp. v. Commissioner,174 F.2d 569 (7th Cir. 1949), affg. 10 T.C. 1199 (1948). We, however, hold that Mr. Carroll's rental charge withstands this degree of scrutiny. As noted in Carroll v. Commissioner,supra,transactions between a corporation and its shareholders are inherently not arm's length and thus we must look for standards by which we may identify whether the parties have reached an arm's-length result; see Ray's Clothes, Inc. v. Commissioner,22 T.C. 1332, 1337 (1954). *74 In the instant case, we find that the expert rebuttal testimony of Mr. Weesner supports the petitioner's computation of a $1,035,000 rental value for the equipment. Both petitioner and Mr. Weesner were experienced in the equipment business and were better able to determine a fair market rental value in the Nashville market during the years in question, than was the respondent's expert, Richard Hedenquist. Mr. Hedenquist attempted to establish a built-up arm's-length rental charge since he was unable to find a comparable rental situation. Mr. Hedenquist's determinations, offered in varying amounts prior to, during and subsequent to the trial, were unpersuasive, and far from sufficient to carry respondent's burden of proof on the section 482 allocation issue. We recognize the difficulty in computing such a fair market rental charge utilizing the methodology mr. Hedenquist used. However, this fact supports our conclusion that what would have been an arm's-length charge between unrelated parties is best determined by those persons who actually dealt in such equipment leasing transactions. Respondent has proposed section 482 allocations under sec. 1.482-2(c)(2)(ii), Income Tax Regs. *75 However this allocation is only to be used when the actual charge for the rental is not equal to an arm's-length charge. We have found here that the actual charge was equal to an arm's-length charge. Accordingly, we hold that respondent has failed to carry his burden of proof with respect to the section 482 allocation. Achiro v. Commissioner,77 T.C. 881, supra.The record in this case fails to support respondent's contention that a section 482 allocation is necessary to clearly reflect income or prevent the evasion of taxes. V.H. Monette & Co. v. Commissioner,45 T.C. 15, 37 (1965), affd. per curiam 374 F.2d 116 (4th Cir. 1967). Petitioner contends that he is entitled to additional rental expense deductions equal to the difference between the fair market rental value as determined by the Court and the amount of rent actually paid during the years in issue. It is a basic tenet of tax accounting that cash method taxpayers may only deduct those amounts paid in their taxable year. Section 461(a).Section 162 allows a deduction for those *76 ordinary and necessary expenses paid or incurred during the taxable year.Where the petitioner paid less than the fair market rental value during the years in issue, he is entitled to deduct the amount of rent paid and no more. Accordingly, we reject petitioner's claim for refund based on unpaid rental expenses. Respondent also proposed the imposition of the section 6653(a) addition to tax for negligence or intentional disregard of the rules and regulations. This determination apparently was based primarily on the deductions by petitioners of amounts paid as equipment rental to the corporation. We have concluded that petitioners are entitled to deduct in full the amount of equipment rental paid to the corporation. Respondent conceded error in his initial determination with respect to the equipment rental adjustment. Based on the facts in this record, we conclude that the addition to tax under section 6653(a) is inappropriate and therefore do not sustain respondent's determination of this addition to tax. Because of issues settled by the parties, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. -- If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩
3. The book value of the equipment was stipulated as $801,069.08 and the notes payable on the equipment totaled $760,986.02. This leaves a net of $40,083.06.However, the parties stipulated that the net book equity transferred for the 100 shares was $40,069.08. Also the stipulated book value of the equipment is not the exact difference in the original cost and depreciation taken on the equipment.↩
4. Associated Equipment Dealers (AED) regularly compiles a national average of rental rates charged for a variety of construction equipment. This list serves merely as a compilation of rental rates and expressly states it is not indicative of rates which should be charged in given markets for specific equipment.↩
5. Sec. 482 reads as follows: SEC. 482.ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS. In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.↩
6. While sec. 482 does not specifically authorize the Commissioner to "disallow" deductions, in making section allocations, that may be the result, Peck v. Commissioner,T.C. Memo. 1982-17↩, with a concurrent correlative adjustment to the other member of the controlled group.
7. Sec. 1.482-2(c)(2), Income Tax Regs., reads in pertinent part as follows: (c) Use of tangible property -- (1) General rule. Where possession, use, or occupancy of tangible property owned or leased by one member of a group of controlled entities (referred to in this paragraph as the owner) is transferred by lease or other arrangement to another member of such group (referred to in this paragraph as the user) without charge or at a charge which is not equal to an arm's length rental charge (as defined in subdivision (i) of subparagraph (2) of this paragraph), the district director may make appropriate allocations to properly reflect such arm's length charge. Where possession, use, or occupancy of only a portion of such property is transferred, the determination of the arm's length charge and the allocation shall be made with reference to the portion transferred. (2) Arm's length charge.↩ (i) For the purposes of this paragraph, an arm's length rental charge shall be the amount of rent which was charged, or would have been charged for the use of the same or similar property, during the time it was in use, in independent transactions with or between unrelated parties under similar circumstances considering the period and location of the use, the owner's investment in the property or rent paid for the property, expenses of maintaining the property, the type of property involved, its condition, and all other relevant facts. If neither the owner nor the user was engaged in the trade or business of renting property, the arm's length rental charge for the taxable year shall be deemed to be equal to the amount specified in subdivision (ii) or (iii) of this subparagraph, whichever is appropriate, unless the taxpayer establishes a more appropriate charge under the standards set forth in the first sentence of this subdivision. For purposes of this subdivision, an owner or user shall be considered to be in the trade or business of renting property if it engages in the trade or business of renting property of the same general type as the property in question to unrelated parties. An owner or user will not be considered to be engaged in the trade or business of renting property of the same general type solely on the basis of casual or infrequent rentals of property which is predominantly used in its trade or business.
8. We note, however, that the formula is to be utilized when "neither the owner nor the user was engaged in the trade or business of renting property." Section 1.482-2(c)(2)(i), Income Tax Regs. The parties have stipulated that the corporation was in the business of renting equipment to the construction company. The record indicates some small amount of rental to others but there is nothing to show whether these outside rentals would be considered sufficient to constitute a trade or business. However, we note that the burden with respect to the section 482 issue is on respondent and he has not shown that the corporation was not in the trade or business of property rentals so that the allocation under section 1.482-2(c)(2)(ii) of the regulations would be applicable.Compare Guyer v. Commissioner,T.C. Memo. 1985-210↩. Neither party argues the issue of whether the formula under the regulations is inappropriate because the corporation was in the trade or business of renting equipment.
9. At the trial, petitioner testified that the findings of fact in Carroll v. Commissioner,T.C. Memo 1978-173↩, correctly recited the facts with respect to the lease of the equipment. In that case we specifically found this reason for the 50 percent reduction.
10. The yearly rental value is determined by multiplying that amount by the cost basis found in respondent's mathematical computation of the sec. 482↩ allocation. That original basis is listed as $3,400,772.58, which multiplied by 36 percent, yields a fair rental value of $1,224,278.13.